IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Reesa EVANS, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Respondent,

v.

Reesa EVANS, Respondent-Appellant.

Supreme Court

*No. 99–1011–D. Submitted on briefs October 5,
2000.—Decided November 17, 2000.*

2000 WI 124

(Also reported in 618 N.W.2d 873.)

279

For the respondent-appellant there were briefs by *Hal Harlowe* and *Hal Harlowe and Associates, S.C.,* Madison.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy & Haas, LLP,* Edgerton.

¶ 1. PER CURIAM. Attorney Reesa Evans appealed from a single finding of the referee, that she fabricated a letter to a client dated March 24, 1997. Attorney Evans also appealed from the referee's recommendation that her license to practice law be suspended for two years.

¶ 2. We determine that the referee's finding of fact that Attorney Evans fabricated the letter is supported by satisfactory and convincing evidence. We determine further that the egregiousness of that misconduct, combined with the referee's other findings of misconduct which Attorney Evans does not dispute, warrants the suspension of her license to practice law for two years.

¶ 3. Attorney Evans was admitted to the practice of law in Wisconsin in 1979 and practices in Madison. She has been disciplined for professional misconduct on three previous occasions. In 1994 she agreed to a private reprimand for failing to hold property of a cli-

ent in trust, separate from her own property, and for failing to promptly deliver to a client funds or other property that the client was entitled to receive. In 1995 she agreed to a private reprimand for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. According to the summary of facts in the letter of reprimand, she altered an expiration date on a document.

¶ 4.    In 1997 Attorney Evans agreed to a public reprimand for conduct in two separate matters involving failing to act with reasonable diligence and promptness in representing a client, failing to keep a client reasonably informed about the status of a matter and failing to comply with reasonable requests for information, and failing to explain the matter to the extent reasonably necessary to permit the client to make an informed decision regarding representation.

¶ 5.    The referee, Attorney John Schweitzer, made findings of fact based on testimony and documentary evidence presented at a disciplinary hearing concerning Attorney Evans' representation of a number of clients. The referee found that in the course of representing these clients Attorney Evans engaged in inappropriate activity with respect to the handling of her client trust account.[1] The referee found that by depositing personal funds into her trust account and

---

[1] During the course of this proceeding, the Board filed a motion seeking the temporary suspension of Attorney Evans' license, asserting that in view of her mishandling of her client trust account, her continued practice of law posed a threat to the interests of the public and the administration of justice. By order dated June 29, 1999, this court denied the Board's motion but imposed a number of conditions on Attorney Evans' continued practice to ensure that her trust account was operated in full compliance with the applicable professional conduct rules.

writing checks for personal expenses out of her trust account, Attorney Evans failed to hold in trust, separate from her own property, the property of clients or third persons that was in her possession in connection with a representation, contrary to SCR 20:1.15(a).[2]

[2] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation and the Supreme Court rules applicable to the lawyer regulation system were also revised. Since the conduct underlying this case arose prior to October 1, 2000, the body will be referred to as "The Board" and all references to Supreme Court Rules will be to those in effect prior to October 1, 2000.

SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately

¶ 6.   The referee also found that by writing trust account checks to herself that were designated on the face of the checks as being attributable to the client but were not recorded on the ledger Attorney Evans allegedly kept for the client and by failing to keep any trust account records that would identify the purpose of sums she withdrew from funds belonging to her clients, Attorney Evans failed to keep complete and accurate records of transactions in her trust account, contrary to SCR 20:1.15(e).[3] The referee also found that Attorney Evans failed to promptly deliver to a client funds that the client was entitled to receive and failed to render a

safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[3] SCR 20:1.15(e) provides:

(e)   Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

full and accurate accounting regarding trust property, contrary to SCR 20:1.15(b).[4] Further, the referee found that by representing to her clients that she was unable to pay them the balance owed because another check deposited to her account was returned when, in fact, there were insufficient funds in the trust account because of personal withdrawals she had made against the clients' money and by representing that checks written on her trust account were returned because a check a client had written to her bounced, Attorney Evans engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[5]

¶ 7.   The referee also found that by failing to respond to inquiries of clients or to meet with them regarding the status of their case, Attorney Evans failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, contrary to SCR 20:1.4(a).[6] The referee also found that Attorney Evans failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions

---

[4] SCR 20:1.15(b) provides:

(b)   Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[5] SCR 20:8.4(c) provides:

It is professional misconduct for a lawyer to:

(c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

[6] SCR 20:1.4(a) provides:

regarding the representation, contrary to SCR 20:1.4(b).[7] Attorney Evans did not appeal from any of these findings of fact or conclusions of law by the referee.

¶ 8. The subject of this appeal involves Attorney Evans' representation of a client who was convicted of armed robbery and first-degree intentional homicide by a jury in Kenosha county in 1987. His conviction was affirmed on appeal. Attorney Evans consulted with the client regarding the need to proceed in state court on a Wis. Stat. § 974.06 (1993–94) motion raising the issue of ineffective assistance of trial counsel. On September 28, 1994, the client's father retained Attorney Evans by paying her a $3000 retainer fee. The retainer agreement included provisions requiring Attorney Evans to consult with the client's father prior to hiring any experts, consultants or investigators and it gave the client's father the right to discharge Attorney Evans at any time. The retainer agreement did not establish the client's father as a co-client with his son, nor did it establish an attorney-client relationship between the client's father and Attorney Evans.

¶ 9. On February 5, 1995, the client sent a letter to Attorney Evans outlining his concern about the lack of communication from her. As a result of the letter, Attorney Evans met with the client and the two agreed that Attorney Evans would continue to represent the

---

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[7] SCR 20:1.4(b) provides:

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

client and would review transcripts and research appellate issues.

¶ 10.  Attorney Evans was unexpectedly hospitalized on December 6, 1995. A letter was prepared on December 26, 1995, to be sent to her clients informing them of the hospitalization but neither the client nor his father received the letter. By letter of May 14, 1996, Attorney Evans informed the client that she had been hospitalized and would be returning to work for a few hours a week. She said that during her illness she had written to authorities in Arizona in an attempt to obtain records relevant to his case.

¶ 11.  On July 16, 1996, the client received a letter from Attorney Evans' receptionist indicating that Attorney Evans would visit the client on July 26 at the correctional institution where he was incarcerated. Attorney Evans did not appear at the correctional institution on that date. In the fall of 1996, the client's father wrote to Attorney Evans requesting the opportunity to meet with her. Attorney Evans did not respond, nor did she meet with the client's father.

¶ 12.  In December of 1996, the Wisconsin division of the American Civil Liberties Union (ACLU) sent information to all inmates in the Wisconsin prison system notifying them about a recent court decision and a federal act that put time limits on federal habeas corpus actions. The Anti-terrorism Act of 1996 established a one-year time limit for filing federal habeas corpus petitions. Existing federal case law interpreted the Act as requiring filing within a reasonable time in those cases that had been decided before the enactment of the Act. A reasonable time period was interpreted to mean one year. The federal decision indicated that, as to cases predating the Anti-terrorism Act, any federal

habeas corpus petition filed on or before April 23, 1997, would be timely.

¶ 13.   When they learned of these new time limits, both the client and his father believed the only way to toll such time limits would be to commence a collateral proceeding under Wis. Stat. § 974.06 (1993–94) in Wisconsin state court before April 23, 1997. In December of 1996, the client's father wrote to Attorney Evans outlining his and his son's concern about the deadline and whether it affected his son's case. Attorney Evans wrote to the client on February 2, 1997, but made no mention of the Anti-terrorism Act.

¶ 14.   From December 1996 through April of 1997, the client's father continued to call and write Attorney Evans with increased anxiety and concern. The last letter was written on April 23, 1997. At that time the client's father indicated he was waiting for a telephone response from Attorney Evans. He did not hear from her. On that same day, the client filed a pro se Wis. Stat. § 974.06 (1993–94) motion in the trial court. That court denied a hearing and the client appealed. On August 19, 1998, the court of appeals reversed and ordered the trial court to conduct an evidentiary hearing on the issue raised in the motion.

¶ 15.   The client's father filed a grievance against Attorney Evans for a failure to communicate with him and his son. On September 16, 1998, Attorney Evans sent a letter to the client saying she had had a conversation with an investigator in the public defender's office regarding the client's father's complaint. She attached a copy of a letter written on her letterhead, dated March 24, 1997, and stated, "It appears that you never received the enclosed letter which I wrote to you back in March, 1997." The March 24, 1997, letter indicated it was Attorney Evans' opinion that the recently

enacted federal law and deadlines did not apply to the client's case.

¶ 16. The March 24, 1997, letter contained a reference to the "federal public defender training program." Although the correct name of the program was the "federal public defender training group," no version of that name came into existence until May of 1998. The referee made findings of fact that the letter dated March 24, 1997, signed by Attorney Evans and described by her as having been written in March of 1997 was in fact not written at that time and that Attorney Evans' statement to Board investigators that she wrote to her client on March 24, 1997, was untrue.

¶ 17. The referee found that by drafting the letter dated March 24, 1997, after the fact and backdating it so that it would appear it was sent to the client on March 24, 1997, Attorney Evans engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, contrary to SCR 20:8.4(c). The referee also concluded that by falsely representing to Board investigators that the letter dated March 24, 1997, was sent to the client on that date, Attorney Evans made a misrepresentation in a disclosure to the Board and failed to cooperate with the Board in such investigation, contrary to SCR 21.03(4)[8] and SCR 22.07(2).[9]

[8] Former SCR 21.03(4) provided:

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[9] Former SCR 22.07(2) provided:

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical

288

¶ 18.  Attorney Evans disputes the referee's finding that she fabricated the letter dated March 24, 1997. She testified at the hearing that after her client posed the question regarding federal habeas corpus law, with which she was unfamiliar, she read the relevant statute and applicable case law. She testified when she was still not confident with the results of her research, she called the federal public defender in Chicago. She said that office was unable to assist her, so she called the federal public defender's office in San Diego. That office was also not able to help her, but the person she spoke to gave her an 800 number in Washington, D.C. and she said she called that number.

¶ 19.  Attorney Evans testified she did not know how the phone in the Washington, D.C. office was answered but as far as she knew she was calling the federal public defender. She told the person who answered that she was calling about a habeas corpus question and she was transferred to someone else. She testified she did not recall if she talked to a man or a woman, but whoever she talked to confirmed her research was correct. She testified at that point she wrote the March 24, 1997, letter to her client.

¶ 20.  Attorney Evans notes that Thomas Hutchison, who works with the federal public defender for the District of Columbia as part of the "federal defender training group," also testified at the hearing. The "federal defender training group" is the name the organization has used since May of 1998. Prior to that time it was known as the sentencing guidelines group.

incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

Mr. Hutchison testified that in March of 1997 his group was physically located in the office of the federal public defender for the District of Columbia but the group's phones rang on a separate system from the rest of the public defender's phones and he could not rule out the possibility that someone walking by the phones did not pick up the phone and answer "public defender's office." He said that would have been an unusual occurrence, however.

¶ 21. Attorney Evans states that the evidence presented to the Board indicates there were four attorneys working in the sentencing guidelines group in March of 1997. One of those attorneys was Fran Pratt. Ms. Pratt maintained a record of the names of people who had called, and her computer records reflect that she spoke to Attorney Evans but the records do not identify the date of the call or the subject matter.

¶ 22. Attorney Evans does not dispute her client's claim that he never received the March 24, 1997, letter but she insists she did author and send it on that date. She argues that the referee's conclusion that she fabricated the letter was based almost entirely on the inference the referee drew from her use of the term "federal public defender training program." The referee concluded that since the office was first called the "federal public defender training group" in 1998, the March 24, 1997, letter using that name must be a fabrication. Attorney Evans argues that the referee's analysis ignores the fact that her description of the group in the letter was generically correct because the office she called in Washington, D.C. was in fact an office of the federal public defender and was what she reasonably believed to be part of its training program.

¶ 23. We conclude that the referee's finding that Attorney Evans fabricated the March 24, 1997, letter is supported by clear and convincing evidence.

¶ 24. The record shows that Attorney Evans' client wrote to her on February 27, 1997, asking her opinion on the effect of the Anti-terrorism Act. He wrote again on April 13, 1997, saying,

> I have not heard from you since your February 2nd correspondence, and I have written to you twice since then. . . .I am confused and uncertain and would simply like to know whether you are still handling my case, and if so, whether the April 23rd deadline will affect my case in terms of filing in federal court down the line.

¶ 25. The client's father testified at a deposition given in this proceeding that between December 1996 and April 1997 he made 30 to 50 phone calls to Attorney Evans but was never able to reach her. He said on most occasions he left a message on her answering machine but on at least one occasion he spoke to someone in her office and left a message asking Attorney Evans to call him back. She never responded.

¶ 26. The client's father wrote letters to Attorney Evans on April 6, April 21 and April 23, 1997, imploring Attorney Evans to get in touch with them. Again, she never replied. It is clear from the letters sent by the client and his father in April of 1997 that the client never received the March 24, 1997, letter. Although Attorney Evans continues to insist that she did send the letter on March 24, 1997, expressing her opinion that the Anti-terrorism Act did not affect her client's case, she fails to explain why she did not respond to any of the increasingly desperate requests for her opinion on that very subject made by both her client and his father throughout April of 1997.

¶ 27.   While it is possible that Attorney Evans did contact the sentencing guidelines group in Washington, D.C. in March of 1997, it does not automatically follow that she wrote a letter to her client at that time. If, as she claims, the letter was sent on March 24, 1997, the flurry of communications from her client and his father in the weeks leading up to April 23, 1997, should have alerted Attorney Evans to the fact that the letter was never received. This, in turn, should have caused her to get in touch with her client and/or his father and furnish them with another copy of the letter. The only reasonable inference that can be drawn from the record is the one drawn by the referee: the letter was not written in March of 1997 but was drafted much later, probably around the time the Board commenced its investigation. The referee's findings in this regard have not been shown to be clearly erroneous. Consequently, we adopt them.

¶ 28.   Attorney Evans also appeals from the referee's recommendation that her license to practice law be suspended for two years. She notes that the recommended two-year suspension stems largely from the referee's finding that she fabricated the March 24, 1997, letter. She says if this court disagrees with the referee's findings concerning the letter, then the discipline imposed should be dramatically reduced. In the alternative, she asserts that even if the referee's disputed factual finding about the March 24, 1997, letter should be adopted, a reduction in the recommended sanction is still appropriate.

¶ 29.   Attorney Evans asserts that a two-year suspension is overly harsh. She points out that throughout her career she has worked for the most needy criminal defendants and her practice has involved helping people who are often otherwise poorly

represented. She says her contribution to the legal profession and her character is attested to by the various character witnesses who testified on her behalf at the hearing, including clients, fellow attorneys, judges and district attorneys.

¶ 30.   The Board takes the position that the trust account violations demonstrate a proven pattern of conduct that goes beyond the serious problem of putting client funds to her own personal use. The Board notes that Attorney Evans used her client trust account as a personal account and failed to keep records that would enable her to distinguish client funds from her own funds. She then wrote checks on an account when there were clearly insufficient funds to cover them and she lied to her clients about the reasons she was unable to pay them the sums they were due.

¶ 31.   The Board also asserts that the creation of a backdated letter as a means of responding to allegations of misconduct is disturbing and the March 24, 1997, letter represents an act of deception and dishonesty toward both her client and the Board. The Board contends that no number of character witnesses can rehabilitate Attorney Evans since her professional misconduct is no less serious in the face of accolades offered by her professional peers.

¶ 32.   Having considered the circumstances surrounding Attorney Evans' professional misconduct, including the misuse of her client trust account, her failure to keep her clients reasonably informed about the status of their cases and promptly comply with reasonable requests for information, and her fabrication of the March 24, 1997, letter, we determine that a two-year license suspension is appropriate. That determination takes into account the mitigating factors of Attorney Evans' representation of people who

are often otherwise poorly represented and her character as attested to by various witnesses.

¶ 33. By her mishandling of her client trust account and the fabrication of a letter, Attorney Evans has shown a willingness to place her own financial interest above the welfare of her clients and has also established a pattern of deception to keep her professional misconduct from being discovered. The suspension we impose is intended not only to impress upon Attorney Evans the gravity of her professional misconduct but also to put other attorneys on notice of the degree of seriousness with which this court views conduct of this nature.

¶ 34. IT IS ORDERED that the license of Reesa Evans to practice law in Wisconsin is suspended for a period of two years, effective December 22, 2000.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order, Reesa Evans pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Reesa Evans to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 36. IT IS FURTHER ORDERED that Reesa Evans comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 37. IT IS FURTHER ORDERED that the Board's second motion for temporary suspension of Attorney Evans' license to practice law in Wisconsin and Attorney Evans' motion to modify this court's June 29, 1999,

order regarding the maintenance of her client trust account are both dismissed as moot.