# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2695-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Khaja M. Din, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant-Respondent,<br>   v.<br>Khaja M. Din,<br>      Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST DIN

| | |
|---|---|
| OPINION FILED: | January 22, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the respondent-appellant, there were briefs by *Claude J. Covelli* and *Boardman & Clark LLP*, Madison.

    For the complainant-respondent, there was a brief by *Robert Krohn* and *Roethe Pope Roethe LLP*, Edgerton.

**2015 WI 4**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2695-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Khaja M. Din, Attorney at Law:

Office of Lawyer Regulation,

      Complainant-Respondent,

  v.

Khaja M. Din,

      Respondent-Appellant.

**FILED**

**JAN 22, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1 PER CURIAM. Attorney Khaja M. Din appeals that portion of a revised report filed by referee John Nicholas Schweitzer on April 9, 2014, recommending that Attorney Din be publicly reprimanded for eight counts of misconduct involving four clients. Attorney Din does not appeal the referee's findings of fact or conclusions of law, but argues that his misconduct warrants a private, rather than a public, reprimand.

¶2 After careful review of the matter, we agree with the referee that the appropriate discipline for Attorney Din's misconduct is a public reprimand. We also agree with the referee's recommendation that Attorney Din pay $14,250 in restitution, and we agree that Attorney Din should pay one-half of the total costs of this proceeding, or $10,003.65.[1]

¶3 Attorney Din was licensed to practice law in Wisconsin in 2007 and practices in Chicago in the area of immigration law. He has not previously been the subject of discipline.

¶4 On December 11, 2012, the Office of Lawyer Regulation (OLR) filed a complaint alleging 28 counts of misconduct with respect to Attorney Din's handling of six client matters. Attorney Din filed an answer to the complaint on February 15, 2013. The referee was appointed on March 28, 2013.

¶5 The OLR filed an amended complaint on October 28, 2013, alleging 12 counts of misconduct with respect to Attorney Din's handling of four client matters. Attorney Din filed an answer to the amended complaint on November 18, 2013.

¶6 On December 23, 2013, the parties filed a stipulation and no contest plea whereby the OLR voluntarily dismissed four counts of the amended complaint and Attorney Din withdrew his answer to the amended complaint and pled no contest to the remaining eight counts, as amended by the OLR in the parties' stipulation. The parties jointly recommended that the referee

---

[1] The supplemental statement of costs filed in this matter shows total costs of $20,007.30 as of July 28, 2014.

determine that the appropriate sanction in the matter be a private reprimand and restitution in the amount of $13,250.

¶7 The referee issued his report on February 13, 2014. Attorney Din filed a motion for reconsideration or, in the alternative, for relief from the stipulation and no contest plea. The referee issued a revised report on April 9, 2014.

¶8 The first instance of client misconduct discussed in the referee's revised report involved Attorney Din's representation of A.N. A.N. was interested in opening a martial arts club in Tomah. She wanted to employ a Philippine national as a martial arts instructor. The man did not have permission to work in the United States, and A.N. was looking for an immigration attorney to advise her concerning bringing him to Tomah to work.

¶9 A.N. spoke by telephone with Attorney Din, whose office at the time was in Madison, on February 5, 2010, and she informed him of her desire to employ the man. When A.N. told Attorney Din that the man was a former Philippines national player and a judge of karate tournaments, Attorney Din recommended that A.N. pursue obtaining an O-1 visa, for people who possess extraordinary ability in the sciences, arts, education, business, or athletics.

¶10 Subsequent to the telephone call, Attorney Din mailed A.N. a flat fee agreement under which she was to pay $2,250 immediately and the balance "at the point of submitting work: for a total fee of $4,500." A.N. signed the fee agreement and made a $2,250 payment by credit card. After that, she sent in

documents that she believed would assist in obtaining an O-1 visa.

¶11 A.N. and Attorney Din met in late July 2010, at which point Attorney Din suggested an L visa be pursued. An L visa involved intercompany transfer of an employee. A.N. told Attorney Din she did not think the L visa was an option. A.N. explained that an H2-B visa appeared appropriate, and Attorney Din indicated that the documentation previously submitted was satisfactory for that purpose. Attorney Din told A.N. they would need to enter into a new fee agreement and an additional $3,750 would have to be paid. Attorney Din told A.N. he would have the H2-B paperwork ready by August 6, 2010.

¶12 A.N. signed a second fee agreement for a flat fee of $3,750 and paid $2,000. A.N. never received the H2-B visa certificate, any accounting of the hours or activities Attorney Din invested in the case, or any refund of unearned fees.

¶13 The parties' stipulation averred, and the referee found, the following counts of misconduct with respect to Attorney Din's representation of A.N.:

> [Count One] By charging and accepting significant fees in [A.N.'s] matter without performing sufficient useful work on [A.N.'s] case, [Attorney] Din collected an unreasonable fee, in violation of SCR 20:1.5(a).[2]

---

[2] SCR 20:1.5(a) provides:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(continued)

4

[Count Two] By failing to show that he had done sufficient work on [A.N.'s] immigration matter, yet failing to refund payments, [Attorney] Din failed to return unearned fees, in violation of SCR 20:1.16(d).[3]

¶14 The second client matter discussed in the referee's revised report involved Attorney Din's representation of E.A-S., a native of Mexico who moved to the United States in 1991. He

---

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[3] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

returned to Mexico for a year and returned to the U.S. illegally in 1996. He has never had permission to reside in the U.S.

¶15 E.A-S. and his spouse sought Attorney Din's assistance in adjusting E.A-S.'s status from that of an illegal alien to a permanent resident or U.S. citizen, based on his marriage. On May 26, 2010, E.A-S. entered into a fee agreement with Attorney Din by which E.A-S. agreed to pay a flat fee of $2,500 in exchange for the preparation and filing of a family-based petition. Additional fees would be required if E.A-S. sought a hardship waiver. E.A-S. paid Attorney Din the $2,500 that day.

¶16 In June of 1010, Attorney Din's paralegal contacted E.A-S.'s spouse to advise that Attorney Din did not have all the documents needed and that it was essential he obtain a copy of E.A-S.'s I-94 document. The paralegal was told that E.A-S. did not have an I-94. Soon thereafter, Attorney Din contacted E.A-S. and requested additional legal fees of $3,000 due to the fact that Attorney Din would need to seek a hardship waiver on E.A-S.'s behalf.

¶17 On June 29, 2010, E.A-S. and his spouse met with Attorney Din and signed a second flat fee agreement, which called for additional legal services consisting of the preparation of a hardship waiver for overstay in the United States. E.A-S. told Attorney Din he would pay $1,500 of the $3,000 fee and would pay the balance the following afternoon.

¶18 On July 2, 2010, E.A-S.'s spouse requested a full refund of the $4,000 paid to Attorney Din as of that date. Attorney Din and E.A-S.'s spouse spoke by telephone on July 2,

at which time Attorney Din advised he would not refund any money to E.A-S.  A request was made for copies of any paperwork Attorney Din's office had generated.  Attorney Din said that by early the next week he would send E.A-S. an itemization of his work performed and an explanation as to why he was not returning any part of a fee.

¶19  On July 9, 2010, Attorney Din wrote to E.A-S. saying he had performed six hours and 50 minutes of work and that he considered the $4,000 flat fee fully earned.  On July 14, 2010, E.A-S. sent Attorney Din another request asking for a full refund of fees.

¶20  The parties' stipulation averred, and the referee found, the following counts of misconduct with respect to Attorney Din's representation of E.A-S.:

> [Count Four]  By charging and accepting significant fees in [E.A-S.'s] matter without any showing that he performed sufficient useful work on [E.A-S.'s] case, [Attorney] Din collected an unreasonable fee, in violation of SCR 20:1.5(a).

> [Count Five] By failing to show that he had done sufficient useful work on [E.A-S.'s] immigration matter, yet refusing a request for a refund of payments, [Attorney] Din failed to return unearned fees, in violation of SCR 20:1.16(d).

¶21  The third client matter discussed in the referee's revised report involved Attorney Din's representation of F.J.C-L., a native of Mexico who resided in Dane County but did not have permission to reside in the U.S.  On July 17, 2009, Attorney Din and F.J.C-L. signed a fee agreement under which Attorney Din agreed to represent F.J.C-L. in filing and

7

appearing in court for a cancellation of removal. Attorney Din asked for payment of a $6,000 advanced flat fee. F.J.C-L. paid Attorney Din $3,000 on July 17, 2009.

¶22 By mid-September 2009, F.J.C-L. had submitted to Attorney Din all the documents Attorney Din had requested of him for filing the immigration petition. On October 15, 2009, Attorney Din and F.J.C-L. signed a second fee agreement, the terms of which were essentially the same as the first one. On October 16, 2009, F.J.C-L. provided Attorney Din with a check for $1,010, which included funds for the filing fee for the immigration petition. At the time that F.J.C-L. provided the check, Attorney Din told him that the petition was ready to file.

¶23 In November of 2009, F.J.C-L. asked Attorney Din to return the $1,010 because he was short on money. He informed Attorney Din he would give him that amount back within two weeks. Attorney Din complied with F.J.C-L.'s request. In December of 2009, F.J.C-L. contacted Attorney Din to advise him that he had the $1,010 again ready for him. Attorney Din informed F.J.C-L. that he did not intend to do anything further with F.J.C-L.'s case. F.J.C-L. asked for a refund of the $3,000 in fees he had paid up to the time Attorney Din filed the petition. Attorney Din provided no evidence of doing any legal work for F.J.C-L. Ultimately, Attorney Din told F.J.C-L. that the $3,000 fee had been earned. On July 7, 2010, F.J.C-L. filed an application with the Wisconsin Lawyers' Fund for Client

Protection (Fund), requesting the return of the $3,000 advanced fee. The Fund approved the claim and paid F.J.C-L. $3,000.

¶24 The parties' stipulation averred, and the referee agreed, that Attorney Din committed the following count of misconduct with respect to his representation of F.J.C-L.:

> [Count Six] By charging and accepting $3,000 in [F.J.C-L.'s] matter without performing or showing he had performed sufficient useful work for [F.J.C-L.], [Attorney] Din collected an unreasonable fee, in violation of SCR 20:1.5(a).

¶25 The final client matter discussed in the referee's revised report involved Attorney Din's representation of K.F. On November 19, 2010, K.F. and his father hired Attorney Din to prepare an investor visa petition for the father, who is a citizen of Iran. The father wanted to invest in a business in the U.S. with his son. Attorney Din charged a flat fee of $8,000 to prepare the visa petition. The fee agreement provided for payment of an additional $2,500 to SB Consulting Group, Inc. for preparation of a business plan. K.F. paid $7,500 with the remaining $3,000 to be paid upon completion of the business plan.

¶26 On October 12, 2011, the OLR received a grievance from K.F. against Attorney Din. In response, Attorney Din claimed he had completed all the necessary work in a timely fashion. In response to the OLR's request for a copy of his entire file, Attorney Din provided some paperwork but produced no work product and no draft of a business plan, completed visa

9

application, or any other document related to a visa application.

¶27 The parties' stipulation averred, and the referee agreed, that Attorney Din committed the following counts of misconduct with respect to his representation of K.F.:

[Count Seven] By failing to consult with his clients regarding the appropriate visa to pursue for [K.F.'s] father and how to best accomplish the transfer of funds for their business, [Attorney] Din violated SCR 20:1.2(a)[4] and SCR 20:1.4(a)(2).[5]

[Count Ten] By collecting $5,000.00 from his clients, yet not being able to show sufficient relevant work in furtherance of his clients' goals, [Attorney] Din collected an unreasonable fee, in violation of SCR 20:1.5(a).

[Count Eleven] By failing to refund unearned fees, when he could submit no evidence of appropriate

---

[4] SCR 20:1.2(a) provides:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[5] SCR 20:1.4(a)(2) provides that a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished."

sufficient legal work he performed himself, [Attorney] Din violated SCR 20:1.16(d).

¶28 The referee's revised report noted that Thomas C. Hochstatter was deposed as an expert witness on immigration law, and he expressed the opinion that Attorney Din did provide some useful work for all of the grievants, but not sufficient work to justify the full fees that were charged and retained. Hochstatter's testimony indicated that Attorney Din should refund $3,750 to A.N., $2,500 to E.A-S., $2,000 to F.J.C-L., and $5,000 to K.F.

¶29 The referee noted that by pleading no contest to the eight charges, the OLR's burden of proof was satisfied and no further proof or analysis of the elements of the alleged offenses was necessary. The referee also noted that the parties, in the stipulation and no contest plea, agreed that the referee may use the allegations of the amended complaint as an adequate factual basis in the record for a determination of misconduct. Accordingly, the referee found that the OLR proved the eight counts of misconduct to which Attorney Din pled no contest.

¶30 The referee said the only substantive issues remaining were the appropriate amount of discipline, including the amount of restitution, and costs. Although the parties' stipulation recommended that Attorney Din make restitution to F.J.C-L. in the amount of $2,000, the referee pointed out that F.J.C-L. filed a claim with the Fund for the return of his $3,000 advanced fee, and the Fund paid him the full $3,000. The

referee further pointed out that the stipulation and no contest plea stated that the payment of restitution was to be "without prejudice to any claims held by the [Fund] as to the various grievants, provided such claims do not duplicate the amounts of restitution agreed to herein, and subject to any defenses [Attorney] Din may raise to such claims." The referee said there was no apparent ambiguity about the Fund's claim and, accordingly, it was appropriate to order Attorney Din to repay $3,000 to the Fund. Thus, the referee recommended that Attorney Din make restitution as follows: $3,750 to A.N.; $2,500 to E.A-S.; $5,000 to K.F.; and $3,000 to the Fund.

¶31 With respect to the appropriate level of discipline, the referee noted that the purposes of professional discipline are to protect the public from further misconduct by the offending attorney, to deter other attorneys from engaging in similar misconduct, and to foster the attorney's rehabilitation. Although the parties stipulated that a private reprimand was appropriate, the referee said that given the number of rule violations and the number of charges and clients affected, a private reprimand was not sufficient. The referee explained:

> It is my opinion that imposing only a private reprimand in a case involving four violations of charging an unreasonable fee for three different clients, plus three failures to return unearned fees for three different clients, plus one instance of failing to consult with a client, would fail adequately to impress on other attorneys the need to follow the rules.

12

¶32 The referee went on to say that even though the purpose of discipline is not to impose punishment per se, appreciating the unpleasant consequences of unprofessional behavior is part of rehabilitation. The referee said he would seriously worry that imposing only a private reprimand would have only minimal rehabilitative effect on Attorney Din. The referee concluded that the purposes of discipline can only be achieved here by the imposition of a public reprimand.

¶33 With respect to costs, the referee noted that the parties made a joint recommendation that Attorney Din pay one-half of the OLR's pre-appellate costs. The referee noted that this joint recommendation was based largely on the "number of counts charged, contested and proven" factor set forth in SCR 22.24(1m)(a), in that certain counts charged in the original complaint were removed from the amended complaint to which Attorney Din pled no contest. The referee found the joint recommendation to be reasonable and recommended that Attorney Din pay one-half of the pre-appellate costs as filed in the OLR's preliminary statement of costs. In its supplemental statement of costs filed on July 28, 2014, the OLR recommended that Attorney Din also be assessed one-half of the appellate costs.

¶34 Attorney Din has appealed the referee's recommendation for a public reprimand and argues that a private reprimand is an appropriate sanction. Attorney Din notes that the OLR voluntarily withdrew 70 percent of the counts of misconduct

13

alleged in its original complaint and amended nearly all the counts that remained.

¶35 While Attorney Din acknowledges that this court is free to impose whatever discipline it deems appropriate, he says this court should impose a private reprimand with restitution because:

- The conduct occurred early in Attorney Din's practice when he was inexperienced;

- Attorney Din provided useful services to his clients;

- The amount of fees to be refunded were matters of judgment;

- Attorney Din promptly and fully cooperated with the OLR's investigation;

- Attorney Din has changed his practice to avoid a recurrence of similar conduct; and

- Attorney Din has no prior private or public discipline.

¶36 In spite of the fact that the parties stipulated that the referee may use the allegations of the amended complaint as an adequate factual basis in the record for a determination of misconduct relating to the eight counts to which Attorney Din entered a no contest plea, Attorney Din argues that the referee improperly made a point of describing the withdrawn allegations. Attorney Din says he did not admit the withdrawn allegations and indeed denies them. He questions why the referee would mention the withdrawn allegations unless they played some conscious or

14

unconscious role in the referee's decision to recommend a public reprimand.

¶37 Attorney Din says the need to document the stage of work completed under flat fee agreements may not be appreciated by lawyers early in their practice. He says an inexperienced lawyer may not anticipate issues that arise if the lawyer's engagement is terminated before the lawyer's work is complete. He says these issues have been brought home to him by this proceeding and he has taken steps to improve his practices to avoid a recurrence of this problem in the future. Attorney Din acknowledges that he exercised poor judgment in failing to make any refund to his clients, but he says the absence of bright line rules determining the proper amount of flat fee refunds ameliorates in some measure the severity of his conduct.

¶38 Attorney Din says he acknowledges his mistakes, and he argues that a private reprimand with restitution will fulfill the purposes of discipline. He says:

> In today's world, the difference between a private and a public reprimand is no small matter, particularly for a lawyer early in practice. Today, a public reprimand is republished in a variety of internet and referral sources. It is a permanent black mark easily accessed electronically. A private reprimand provides lawyers fairly early in their practices with another chance without this permanent stigma. A public reprimand is not necessary to protect the public, to deter others or to rehabilitate [Attorney] Din. This proceeding has already had a salutary effect on [Attorney] Din's practices. A private reprimand will fulfill all purposes of discipline and will be consistent with this Court [sic] adherence to a pattern of progressive discipline.

¶39 The OLR asserts that the referee's revised report addresses Attorney Din's objections to the initial report. The OLR argues that a flat fee agreement does not excuse the repeated failure to return unearned fees when a lawyer fails to complete the agreed upon services. The OLR says that regardless of the description of the fee, the fact is that a lawyer must perform the agreed upon services. In this matter, Attorney Din collected fees from several clients but failed to provide sufficient useful work for the client and then refused to refund any fees upon the client's request. The OLR disagrees with Attorney Din's argument that he ought to be afforded some special consideration due to the fact that the fee was a flat fee.

¶40 The OLR acknowledges that it stipulated to the propriety of imposing a private reprimand, and it says it is not backing away from that recommendation. However, the OLR says that a stipulation from the parties is not binding upon the court as to sanction. The OLR also notes that no two disciplinary matters are identical, and it says the parties submitted a good deal of authority to the referee as to the appropriate sanction and the referee considered many cases on the subject.

¶41 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the

referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶42 There is no showing that any of the referee's findings of fact are erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Din violated the supreme court rules set forth above.

¶43 With respect to the appropriate level of discipline, upon careful review of the matter, we agree with the referee that Attorney Din's misconduct warrants a public reprimand. Even though Attorney Din had been practicing law for only a few years at the time he undertook the representations that gave rise to this case, and even though he has no prior disciplinary history, he pled no contest to eight counts of misconduct involving four clients, and he does not dispute the fact that he owes restitution of $14,250. The misconduct allegations at issue here are not insignificant, nor are the violations technical in nature. Attorney Din took fees from clients and failed to complete the agreed upon services. When the clients asked for refunds, he refused to provide them.

¶44 The facts of this case are somewhat analogous to those in In re Disciplinary Proceedings Against Grapsas, 174 Wis. 2d 816, 498 N.W.2d 400 (1993) and In re Disciplinary Proceedings Against Halverson, 225 Wis. 2d 215, 591 N.W.2d 821 (1999). In both of those cases, the attorneys were publicly reprimanded for one count of failure to return unearned fees, as well as other violations. Attorney Din pled no contest to four counts of collecting an unreasonable fee, three counts of

17

failing to return unearned fees when he failed to complete the agreed upon services, and one count of failing to consult with a client. We agree with the referee that a private reprimand would unduly depreciate the seriousness of the offenses.

¶45 We agree with the referee that Attorney Din should be required to make restitution in the total amount of $14,250. Finally, we find it appropriate to reduce the amount of costs in this case by 50 percent. SCR 22.24(1m) notes that it is this court's general policy, upon a finding of misconduct, to impose all costs upon the respondent. In appropriate cases, the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. The OLR's original complaint alleged 28 counts of misconduct and sought a one-year suspension. The amended complaint alleged 12 counts of misconduct and sought a public reprimand. The OLR subsequently agreed to dismiss an additional four counts and concluded that a private reprimand would be sufficient. In its supplemental statement of costs, filed on July 28, 2014, the OLR recommends that 50 percent of the total costs, $10,003.65, be assessed against Attorney Din. We agree that assessing one-half of the costs is appropriate under the facts of this case.

¶46 IT IS ORDERED that Khaja M. Din is publicly reprimanded for professional misconduct.

¶47 IT IS FURTHER ORDERED that within 60 days of the date of this order, Khaja M. Din shall make restitution as follows: $3,750 to A.N.; $2,500 to E.A-S.; $5,000 to K.F.; and $3,000 to the Wisconsin Lawyers' Fund for Client Protection.

18

¶48 IT IS FURTHER ORDERED that within 60 days of the date of this order, Khaja M. Din shall pay to the Office of Lawyer Regulation one-half of the costs of this proceeding, $10,003.65.

¶49 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶50 IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.