# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP2742-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Thomas O. Mulligan, Attorney at Law: <br><br> Office of Lawyer Regulation, <br>         Complainant-Respondent, <br>     v. <br> Thomas O. Mulligan, <br>         Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST MULLIGAN

| | |
|---|---|
| OPINION FILED: | October 8, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J., concurs. (Opinion filed.) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | BRADLEY, ZIEGLER, J.J., did not participate. |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP2742-D

STATE OF WISCONSIN                    :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Thomas O. Mulligan, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**Thomas O. Mulligan,**

      **Respondent-Appellant.**

**FILED**

**OCT 8, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*

¶1    PER CURIAM.  Attorney Thomas O. Mulligan appeals a report filed by Referee Robert E. Kinney, concluding that Attorney Mulligan engaged in professional misconduct and recommending that this court suspend his license to practice law in Wisconsin for a period of 18 months, order Attorney Mulligan to make restitution to a client, and impose full costs, which total $17,720.02 as of May 12, 2015.  Attorney Mulligan asserts

that his admitted ethical violations are de minimus and do not warrant restitution, license suspension, or full costs.

¶2 Having considered the referee's report and the parties' briefs and oral argument on appeal, we conclude that the referee's relevant findings of fact are supported by satisfactory and convincing evidence and we accept his conclusion that Attorney Mulligan committed the eight counts of misconduct alleged in the Office of Lawyer Regulation's (OLR) complaint. We conclude, however, that Attorney Mulligan's misconduct warrants a nine-month suspension of his license to practice law in this state, and we direct Attorney Mulligan to attend a trust account seminar and, upon reinstatement, to submit to trust account monitoring. We decline to order restitution to R.W. for the reasons stated herein. Finally, we impose the full costs of this proceeding on Attorney Mulligan.

¶3 Attorney Mulligan was licensed to practice law in Wisconsin in 1985. He lives and practices in Spooner, Wisconsin, where he is a general practitioner.

¶4 Attorney Mulligan has previously been disciplined for misconduct. In 1997, Attorney Mulligan received a private reprimand for failing to properly communicate with his client, failing to return a client's file, failing to refund unearned fees upon termination of representation, and failing to communicate the basis or rate of his fee within a reasonable time after commencing the representation. Private Reprimand No. 1997-25. In 2005, Attorney Mulligan received a private reprimand for failing to timely refund an advanced payment of a

fee that had not been earned. Private Reprimand No. 2005-10. In 2009, Attorney Mulligan received a public reprimand for failing to consult with his client regarding his intent to proceed with an appeal without obtaining trial transcripts and failing to consult with his client regarding his decision to seek only de novo review of a contract. In re Disciplinary Proceedings Against Attorney Mulligan, 2009 WI 12, 315 Wis. 2d 605, 759 N.W.2d 766.

¶5 The OLR filed the complaint giving rise to this proceeding on December 12, 2013, alleging eight counts of professional misconduct committed in two client matters and trust account anomalies. Attorney Mulligan retained counsel and filed an answer. Referee Kinney was appointed. The parties filed a comprehensive stipulation of facts. The referee conducted a one-day hearing in July 2014, and both parties filed post-hearing briefs and proposed findings of fact and conclusions of law. The referee issued his report and recommendation on October 24, 2014. This appeal followed. The court heard oral argument on April 22, 2015.

¶6 When reviewing a referee's report and recommendation, we affirm the referee's findings of fact unless they are clearly erroneous. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law de novo. In re Disciplinary Proceedings Against Alia, 2006 WI 12, ¶39, 288 Wis.2d 299, 709 N.W.2d 399. We determine the appropriate level of discipline to impose given the particular facts of each case,

3

independent of the referee's recommendation, but benefitting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

R.W. Matter

¶7 Attorney Mulligan does not contest that he committed the misconduct alleged in connection with his representation of R.W. but deems the infractions de minimus. The facts will be summarized because the admitted misconduct is relevant to our assessment of appropriate discipline and because the referee's evaluation of this matter will require some discussion when we assess discipline.

¶8 R.W. was a teen with drug and alcohol issues who faced 81 criminal charges in Washburn and Burnett Counties, consolidated into one Washburn County case filed on January 8, 2008. In July 2008, Attorney Mulligan assumed R.W.'s representation. No fee agreement was executed. At the beginning of Attorney Mulligan's representation, R.W.'s father gave Attorney Mulligan a $5,000 check. This initial $5,000 payment was deposited into Attorney Mulligan's business account rather than his trust account.

¶9 The district attorney sought forfeiture of R.W.'s entire $10,000 bond for bail jumping, but eventually agreed to release $5,000 to Attorney Mulligan's trust account in return for a $5,000 forfeiture to Washburn County. The Washburn County Clerk of Court issued a $5,000 check to Attorney Mulligan's trust account; it was deposited on January 13, 2009. Attorney

4

Mulligan and R.W. agreed that Attorney Mulligan was to deposit $500 from the $5,000 refund into R.W.'s county jail account.

¶10  On January 14, 2009, Attorney Mulligan transferred the $5,000 in refunded bail money from his trust account to his business account.  Two weeks later, on January 29, 2009, Attorney Mulligan mailed a $500 check to R.W.'s county jail account.  R.W. later requested an accounting.  No accounting was provided until R.W. threatened to file a grievance.

¶11 The OLR's complaint alleged that "[b]y accepting $5,000 to represent [R.W.] in numerous criminal matters, and failing to enter into a written fee agreement with [R.W.] or [his father], [Attorney] Mulligan violated [Supreme Court Rule (SCR)] 20:1.5(b)(1) and (2)"[1] (Count One).

---

[1] SCR 20:1.5(b)(1) and (2) provide:

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past.  If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

¶12 The complaint alleged further that "[b]y failing to deposit the initial $5,000 advanced fee payment into his trust account, without providing the written notices required under SCR 20:1.15(b)(4m) or otherwise indicating a proper basis or intent to utilize the alternative advanced fee placement measures stated in SCR 20:1.15(b)(4m), [Attorney] Mulligan violated SCR 20:1.15(b)(4)"[2] (Count Two).

¶13 The complaint alleged further that "[b]y withdrawing $5,000 bail return money from his trust account and promptly transferring the funds into his general account, when $500 of that amount belonged to [R.W.], pursuant to a written agreement, [Attorney] Mulligan violated SCR 20:1.15(b)(1)"[3] (Count Three).

¶14 Again, Attorney Mulligan does not contest these charges and we accept the referee's conclusion that Attorney

---

[2] SCR 20:1.15(b)(4) provides:

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[3] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

Mulligan committed the misconduct, as alleged, in connection with the matter of R.W.

A.B. Matter

¶15 Attorney Mulligan does not contest the misconduct alleged in connection with his representation of A.B. but deems the infractions de minimus.

¶16 In September 2009, A.B. hired Attorney Mulligan to represent her in a divorce. The parties executed a fee agreement dated September 23, 2009. A.B. gave Attorney Mulligan $1,750 on September 24, 2009, as an advanced fee in contemplation of future legal services.

¶17 Attorney Mulligan did not place the advanced fee into his trust account; the fee agreement did not contain the notices required under SCR 20:1.15(b)(4m) that would allow for the placement of the advanced fee into an account other than Attorney Mulligan's trust account.

¶18 The OLR's complaint alleged that "[b]y failing to deposit [A.B.'s] advanced fee payment into his trust account without providing the written notices required under SCR 20:1.15(b)(4m) or otherwise indicating a proper basis or intent to utilize the alternative advanced fee placement measures stated in SCR 20:1.15(b)(4m), [Attorney] Mulligan violated SCR 20:1.15(b)(4)" (Count Four).

¶19 Again, Attorney Mulligan does not contest this charge and we accept the referee's conclusion that he committed the misconduct as alleged.

7

Trust Account Anomalies

¶20 Attorney Mulligan does not dispute that he violated certain trust account rules. He does dispute that he committed misconduct in violation of SCR 20:8.4(c),[4] as alleged in Count Six of the OLR's complaint.

¶21 During the OLR's investigation, the OLR discovered systemic trust account anomalies. On December 1, 2011, the OLR sent Attorney Mulligan a letter requesting copies of his trust account records for the years 2008 through 2011, inclusive. Attorney Mulligan provided the requested copies but did not provide client ledgers or monthly reconciliation statements because he did not maintain them. Attorney Mulligan's check stubs did not show a running balance, did not show the source for all deposits, and did not consistently show the identity of the client for whom funds were deposited or disbursed.

¶22 The OLR reconstructed Attorney Mulligan's trust account and, according to the complaint, between December 17, 2007 and December 31, 2011, Attorney Mulligan and his wife, the only authorized signatories to the trust account, deposited personal funds totaling $45,380.57 into the trust account. During the same period, Attorney Mulligan disbursed $54,869.01 from the trust account for personal obligations, including income taxes, property taxes, and attorney fees. The

---

[4] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

disbursements from Attorney Mulligan's trust account included some $6,593 in cash withdrawals, which are specifically prohibited by SCR 20:1.15(e)(4)a.

¶23 The opening balance of Attorney Mulligan's trust account in December 2007 was $2,774.88. Assuming some of these funds may have belonged to Attorney Mulligan, between December 17, 2007 and December 31, 2011, Attorney Mulligan disbursed from his trust account at least $6,313.56 and as much as $9,088.44 more for personal matters than he had on deposit during this time period.

¶24 The OLR's complaint alleged that "[b]y depositing $45,380.57 of personal funds into his trust account between December 17, 2007 and December 31, 2011, thereby commingling personal funds with trust account funds, [Attorney] Mulligan violated SCR 20:1.15(b)(3)"[5] (Count Five).

¶25 The complaint alleged further:

> By disbursing from his trust account, and by allowing his wife to make disbursements from his trust account, totaling at least $6,713.56 and as much as $9,488.44[6] more for personal matters than he had on

---

[5] SCR 20:1.15(b)(3) provides that "[n]o funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[6] It was later confirmed by an OLR investigator that the figures used in the complaint ($6,713.56 and $9,488.44) were incorrect. The referee subsequently also used these figures in parts of his report. It is undisputed that this is a typographical error on the referee's part. The correct numbers are $6,313.56 and $9,088.44.

deposit between December 17, 2007 and December 31, 2011, [Attorney] Mulligan failed to hold in trust and converted a net total of between $6,713.56 and $9,488.44 of client or third party funds for his personal use; and by disbursing funds for personal matters on numerous occasions when he did not have sufficient personal funds on deposit in the trust account to cover such disbursements, [Attorney] Mulligan violated [] SCR 20:1.15(b)(1), and current SCR 20:8.4(c) [(Count Six)].

¶26 The complaint alleged further that "[b]y failing to maintain a complete transaction register, subsidiary client ledgers, and monthly reconciliation statements, [Attorney] Mulligan violated the trust account record keeping requirements of SCR 20:1.15(f)(1)"[7] (Count Seven).

---

[7] SCR 20:1.15(f)(1) provides:

Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. Transaction register. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

(continued)

10

5. the balance in the account after each transaction.

b. Individual client ledgers. A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

c. Ledger for account fees and charges. A subsidiary ledger shall be maintained for funds of the lawyer deposited in the trust account to accommodate monthly service charges. Each deposit and expenditure of the lawyer's funds in the account and the balance following each transaction shall be identified in the ledger.

d. Deposit records. Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.

e. Disbursement records.

1. Checks. Checks shall be pre-printed and pre-numbered. The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check. Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name. Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.

(continued)

2. Canceled checks. Canceled checks shall be obtained from the financial institution. Imaged checks may be substituted for canceled checks.

3. Imaged checks. Imaged checks shall be acceptable if they provide both the front and reverse of the check and comply with the requirements of this paragraph. The information contained on the reverse side of the imaged checks shall include any endorsement signatures or stamps, account numbers, and transaction dates that appear on the original. Imaged checks shall be of sufficient size to be readable without magnification and as close as possible to the size of the original check.

4. Wire transfers. Wire transfers shall be documented by a written withdrawal authorization or other documentation, such as a monthly statement of the account that indicates the date of the transfer, the payee, and the amount.

f. Monthly statement. The monthly statement provided to the lawyer or law firm by the financial institution shall identify the name and address of the lawyer or law firm and the name of the account.

g. Reconciliation reports. For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and

(continued)

12

¶27 Finally, the complaint alleged that "[b]y making the cash disbursements totaling $6,593.00 from the trust account, [Attorney] Mulligan violated SCR 20:1.15(e)(4)a."[8] (Count Eight).

¶28 Attorney Mulligan does not contest the violations alleged in Counts Five, Seven, and Eight, and we accept the referee's conclusion that Attorney Mulligan committed this misconduct, as alleged. However, Attorney Mulligan challenges the referee's conclusion that he violated SCR 20:8.4(c) (Count Six).

¶29 Attorney Mulligan asserts that his conduct did not involve dishonesty, fraud, deceit, or misrepresentation and thus did not violate SCR 20:8.4(c). Attorney Mulligan argues that: (1) there is no evidence of any intentional cover up of personal expenditures; (2) "no clients complained that they did not receive funds they were entitled to from Attorney Mulligan;" (3) "OLR provided no specific evidence regarding the conversion of any particular client funds;" and (4) Attorney Mulligan personally engaged in a good faith effort to always ensure that sufficient personal funds were available for payment of personal expenses from the trust account. Attorney Mulligan seeks to distinguish his conduct from cases in which this court has ruled that a lawyer violated SCR 20:8.4(c). See, e.g., In re

---

subtracting outstanding checks and other deductions from the balance in the monthly statement.

[8] SCR 20:1.15(e)(4)a. provides that "[n]o disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

13

_Disciplinary Proceedings Against Carroll_, 2001 WI 130, ¶15, 248 Wis. 2d 662, 636 N.W.2d 718 (lawyer set in motion the fraudulent conduct in violation of SCR 20:8.4(c)); see also _In re Disciplinary Proceedings Against Usow_, 214 Wis. 2d 596, 600-01, 571 N.W.2d 162 (1997) (attorney submitted accounting that "contained duplicative, speculative and inflated charges" due to carelessness, neglect, and his failure to properly supervise office staff).

¶30 A lawyer must hold the property of others with the care required of a professional fiduciary. SCR 20:1.15 (Wisconsin Comment). A finding of wrongful intent is not necessary to prove a violation of SCR 20:8.4(c). A violation of SCR 20:8.4(c) can be based on an attorney's "carelessness and neglect." See, e.g., _Carroll_, 248 Wis. 2d 662; _Usow_, 214 Wis. 2d 596. Similarly, an attorney's claim of good faith does not preclude a determination of misconduct in violation of SCR 20:8.4(c). See, e.g., _In re Disciplinary Proceedings Against Edgar_, 230 Wis. 2d 205, 601 N.W.2d 284 (1999).

¶31 The referee was not convinced by Attorney Mulligan's reasoning that he did not commit misconduct in violation of SCR 20:8.4(c) because "no clients complained that they did not receive funds they were entitled to from Attorney Mulligan." At the evidentiary hearing, Attorney Mulligan was questioned extensively about specific "unaccounted-for" balances on various client accounts. Attorney Mulligan asserted that the "unaccounted-for" balances existing at year-end were fees earned by him. The OLR trust account investigator was asked about the

14

client ledger, noting that many of those client ledgers result in a zero balance.

> Q  Just based on those numbers, is it true that there was ample unaccounted for client funds in trust to cover the personal expenditure overage by Mr. Mulligan?
>
> A  Yes.

¶32 The referee was troubled by a bookkeeping strategy that basically deemed anything left over as "fees."  The evidence supports the referee's findings that Attorney Mulligan not only comingled his own money with client funds, but also used client funds for his own purposes.  The referee explained it well:

> It may well be, once again giving [Attorney Mulligan] the benefit of the doubt, that [Attorney] Mulligan did not know whose funds he was withdrawing. The record clearly shows, however, that the money he withdrew was not all his own.  It is not seriously contested that he withdrew more money than the personal money he deposited.  It is not necessary for the OLR to prove whose money he withdrew on any given day.  We know the list of possibilities.    . . . .    That [Attorney Mulligan] permitted this situation to exist is a sad state of affairs, and it is one for which he is answerable in this proceeding.

(Emphasis added.)  The referee explained why this is wrong:

> The problem is that "inadequate trust account records" are themselves a form of wrongdoing.  The seriousness of such wrongdoing is highlighted by the facts of this case.  Under the circumstances, to the extent there is any lack of clarity, it is entirely the responsibility of [Attorney Mulligan].

15

¶33 Comingling funds is not a trivial or technical rule violation. The Law of Lawyering, Third Addition, Geoffrey C. Hazard, Jr., 2014 Supplement, at 19-9, states:

> In most jurisdictions, disciplinary authorities treat violations of the rule against commingling trust funds and personal funds extremely seriously. . . . even where the client or third party suffers no loss, harsh sanctions usually follow as a prophylactic warning that comingling cannot be tolerated.

¶34 Attorney Mulligan's assertion that the OLR failed to show "specific evidence regarding the conversion of any particular client funds" is unavailing particularly where, as here, Attorney Mulligan's inability to produce the trust account records required by the rules of professional responsibility is part of the reason it is now difficult to discern "with specificity" which client funds kept Attorney Mulligan's trust account afloat. In In re Trust Estate of Martin, 39 Wis. 2d 437, 441-42, 159 N.W.2d 660 (1968), we explained:

> A trustee is not handling his own funds but funds of others and he must always be able to make a full accounting of his stewardship. When a trustee's accounts are not clear and accurate, all presumptions are against him and the obscurities and doubts are to be taken adversely against him.

¶35 This rationale applies in the attorney regulatory context. In re Disciplinary Proceedings Against Weigel, 2012 WI 124, ¶41, 345 Wis. 2d 7, 823 N.W.2d 798. Here, the record reflects that between December 2007 and December 2011, Attorney Mulligan deposited over $45,000 of personal funds into his trust account and withdrew at least $6,313.56 and as much as $9,088.44 more for personal expenditures than he deposited for

16

personal expenses during that period of time.  The OLR trust account investigator testified:

> We were able to determine that based upon the running balance in the account, it appeared on several occasions the balance of Mr. Mulligan's personal account went negative when he made disbursements. Therefore, he must have used other funds, other client or third-party funds, that were deposited in the account in order to cover those disbursements.

¶36 Conversion has been described as:

> [T]he unauthorized use of a client's funds for the lawyer's own purpose. It includes temporary use, and it extends to use that does not result in personal gain or benefit to the lawyer. Paying one client out of money due another, keeping an unearned advance fee, holding on to unused escrow funds, and applying client funds to the client's bill are all examples of conversion.

Weigel, 345 Wis. 2d 7, ¶41 (quoting ABA/BNA Lawyers' Manual on Professional Conduct § 45:503 (2007)).  Thus, the fact that the OLR has not identified "specific" examples of conversion does not preclude a determination that a lawyer engaged in conversion, constituting misconduct.

¶37 Attorney Mulligan clearly believes that because he sought to ensure that sufficient personal funds were available to avoid overdraft, this excuses his trust account violations. The record evidence, however, demonstrates that by extensive commingling of personal and client monies, Attorney Mulligan misrepresented the balance of client funds in his trust account at any given point in time.  See, e.g., Attorney Grievance Comm'n of Md. v. Glenn, 671 A.2d 463, 487 (Md. Ct. App. 1996) (rejecting a lawyer's claim that his own deposits into a trust

account cured any trust account violation, observing that "a trust account is a trust account, not one dependent on discretionary infusions of money from another source"). Attorney Mulligan's trust account so inextricably comingled client and personal funds that it is impossible to know which or whose funds were being used at any particular time. The record here supports the referee's findings and conclusions that the trust account anomalies at issue rose to the level of misconduct under SCR 20:8.4(c).

¶38 We turn to the question of appropriate discipline. The referee recommends an 18-month suspension together with $7,500 in restitution to R.W. and full costs. Attorney Mulligan appeals, objecting to restitution and full costs, and asserting that a reprimand should suffice for what he maintains is de minimus misconduct.

¶39 In assessing a proper sanction, we consider the following factors: (1) the seriousness, nature, and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct; (3) the need to impress upon the attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct. In re Disciplinary Proceedings Against Hammis, 2011 WI 3, ¶39, 331 Wis. 2d 19, 793 N.W.2d 884. In addition, we follow the concept of progressive discipline. In re Disciplinary Proceedings Against Brandt, 2012 WI 8, ¶21, 338 Wis. 2d 524, 808

N.W.2d 687; In re Disciplinary Proceedings Against Nussberger, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501.

¶40 The referee recommends that Attorney Mulligan be ordered to pay $7,500 in restitution to R.W. as reimbursement for unearned fees. The OLR did not seek restitution in the complaint or during the disciplinary litigation, stating that it "could not ascertain a reasonable amount to be refunded." Nothing precludes a referee from making or this court from accepting a sua sponte recommendation regarding restitution. See In re Disciplinary Proceedings Against Din, 2015 WI 4, 360 Wis. 2d 274, 858 N.W.2d 654 (referee overruled parties' stipulation to restitution totaling $13,250, instead recommending $14,250 total restitution, and we adopted the referee's recommendation). We are not persuaded that Attorney Mulligan lacked a sufficient opportunity to address the referee's findings and recommendation regarding restitution. Attorney Mulligan appealed the report and has argued his case extensively in his appellate briefs and at oral argument.

¶41 The referee's recommendation was based on the referee's review, primarily, of two exhibits Attorney Mulligan offered at the evidentiary hearing: Exhibit D, an itemization of Attorney Mulligan's work performed for R.W.; and Exhibit E, 24 pages of printouts documenting court activity in R.W.'s criminal cases from the Wisconsin Court System Circuit Court Access (WCCA) website. Attorney Mulligan presented this evidence in support of his theory that, although he failed to provide a fee agreement, R.W. received the legal services he

paid for; Attorney Mulligan maintains that the $9,500 fee he received from R.W. was reasonable.

¶42 The referee's assessment of this itemization is scathing. He deemed the itemization a faulty, error-riddled document generated after the fact; indeed, he refers to it as a "fabrication" and opined that several of the itemized events either did not take place or could not have taken the time the itemization asserts.

¶43 We conclude, however, that the evidence fails to support a $7,500 restitution order. We agree with the OLR's original assessment that this record does not permit us to ascertain a reasonable amount, if any, to be refunded, and we decline to impose restitution in this matter.

¶44 Attorney Mulligan expresses concern about what he perceives to be extraneous investigation, findings, and conclusions in the referee's report. As noted, the report does contain an extensive and largely negative characterization of Attorney Mulligan's professional efforts on behalf of R.W. Attorney Mulligan contends that the referee's commentary pertaining to the fee itemization, his review of WCCA records, and his post-hearing review of Attorney Mulligan's trust account records were improper.

¶45 While the referee pursued this inquiry with unusual zeal, we need not explore whether his efforts transcend propriety. The referee is the ultimate arbiter of the facts and credibility of witnesses. His observations inform our review and we discern no reason to deem his findings clearly erroneous.

20

The findings are germane, primarily, to the referee's restitution recommendation, which we have declined to adopt. We are mindful, moreover, that the OLR did not allege a lack of competent representation under SCR 20:1.1 or a lack of diligence under SCR 20:1.3. The discipline we impose today is based on the eight counts of misconduct alleged in the OLR complaint.

¶46 We agree with Attorney Mulligan that the disciplinary cases cited by the OLR generally reflect more egregious misconduct than occurred here and thus provide limited guidance. See In re Disciplinary Proceedings Against Evans, 2000 WI 124, 239 Wis. 2d 279, 618 N.W.2d 873 (lawyer with disciplinary history suspended for two years, for conversion of client funds, failure to provide the client with an accounting, and misrepresentations to cover her inability to pay the balance); Edgar, 230 Wis. 2d 205 (lawyer suspended for two years for conversion of $11,000 from an escrow account, misrepresentations, and failure to maintain required records).

¶47 However, Attorney Mulligan's effort to characterize his misconduct as trivial is similarly unpersuasive. The record demonstrates that between 2007 and 2011, Attorney Mulligan failed to properly maintain trust account records, deposited personal money into his trust account, disbursed money from his trust account for personal expenses, and regularly deposited client funds into his business account. Attorney Mulligan's actions are not mere "technical deficiencies." The record before us also reveals a persistent pattern of failure to abide by the requirements of our rules of professional conduct.

21

¶48 We find useful guidance in <u>In re Disciplinary Proceedings Against Schuster</u>, 2006 WI 21, 289 Wis. 2d 23, 710 N.W.2d 458, where a lawyer was suspended for nine months for significant and pervasive trust account violations, including comingling of personal and trust accounts. Upon consideration of the relevant facts and misconduct, we conclude that a nine-month suspension of Attorney Mulligan's license to practice law is appropriate and warranted by the facts and by the principle of progressive discipline.

¶49 As in <u>Schuster</u>, some conditions are appropriate to foster Attorney Mulligan's compliance with trust account requirements. We direct him to attend an OLR trust account seminar and, following reinstatement, Attorney Mulligan shall submit to OLR trust account monitoring for a period of three years, or until such time as the OLR moves this court for an order ending monitoring.

¶50 Finally, we consider Attorney Mulligan's repeated objections to the costs of this proceeding. Attorney Mulligan argues that some of the counts in the OLR's complaint are technicalities and some are duplicative, that he cooperated in the proceedings, and that the referee engaged extraneous and irrelevant findings. The court's general policy is that, upon a finding of misconduct, it is appropriate to impose all costs, including the expenses of counsel for the OLR, upon the respondent. We perceive nothing in this record to justify deviating from our usual policy of imposing full costs. We decline to reduce costs on the theory that the referee

22

scrutinized evidence too closely. We assess the full costs of this proceeding against Attorney Mulligan.

¶51 IT IS ORDERED that the license of Thomas O. Mulligan to practice law in Wisconsin is suspended for a period of nine months, effective November 7, 2015.

¶52 IT IS FURTHER ORDERED that within 60 days of the date of this order, Thomas O. Mulligan shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $17,720.02.

¶53 IT IS FURTHER ORDERED that Thomas O. Mulligan shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶54 IT IS FURTHER ORDERED that, as a condition of any reinstatement of his license to practice law in Wisconsin, Thomas O. Mulligan shall attend and successfully complete an Office of Lawyer Regulation trust account seminar and shall pay the related participation fees.

¶55 IT IS FURTHER ORDERED that, upon reinstatement of his license to practice law, Thomas O. Mulligan's trust account shall be subject to monitoring by the Office of Lawyer Regulation for three years or until further order of this court.

¶56 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶57 ANN WALSH BRADLEY, J., and ANNETTE KINGSLAND ZIEGLER, J., did not participate.

23

¶58 SHIRLEY S. ABRAHAMSON, J. *(concurring).* OLR sought a two-year suspension. The referee recommended an 18-month suspension. After a contested proceeding, the court imposes a nine-month suspension for repeated significant violations of trust accounting rules (not merely "technical" violations).

¶59 This is Attorney Mulligan's fourth brush with OLR. In 1997, Attorney Mulligan received a private reprimand. In 2005, he received a private reprimand. In 2009, he received a public reprimand.

¶60 Attorney James T. Runyon also violated substantive trust accounting rules. OLR v Runyon, 2015 WI 95, ___ Wis. 2d ___, ___ N.W.2d ___. He has had two prior brushes with OLR. In 1988, his license was suspended for one year. In 2006, he received a private reprimand.

¶61 I have difficulty reconciling the significantly different levels of discipline imposed in these two trust accounting cases.