Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:12 AM CST

- 906 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. John C. Nimmer, respondent.

___ N.W.2d ___

Filed August 31, 2018.    No. S-17-111.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. ____: ____. In an attorney discipline proceeding, when a party takes exception to the referee's report, the Nebraska Supreme Court conducts a trial de novo on the record, in which the court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Disciplinary Proceedings.** Client trust accounts, in particular, are always open to review by the Counsel for Discipline.

4. **Disciplinary Proceedings: Rules of the Supreme Court: Time.** An attorney's failure to preserve client trust account records does not provide an affirmative defense to charges of impermissible commingling, nor does the 5-year preservation rule under Neb. Ct. R. of Prof. Cond. § 3-501.15 constrain or limit the Counsel for Discipline's investigative or prosecutorial duties.

5. **Disciplinary Proceedings: Time.** There is no time limitation on the acts or omissions that can give rise to attorney discipline for violating the Nebraska Rules of Professional Conduct, the attorney's oath, or the provisions of Nebraska's disciplinary rules.

6. **Disciplinary Proceedings: Attorneys at Law.** Attorneys licensed to practice law in the State of Nebraska agree to operate under the supervision of the office of the Counsel for Discipline.

- 907 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

7. \_\_\_\_: \_\_\_\_. A license to practice law confers no vested right, but is a conditional privilege, revocable for cause.

8. \_\_\_\_: \_\_\_\_. Violation of any of the ethical standards relating to the practice of law or any conduct of an attorney in his or her professional capacity which tends to bring reproach on the courts or the legal profession constitutes grounds for suspension or disbarment.

9. **Disciplinary Proceedings.** Violation of the standards set forth in the disciplinary rules must be established by clear and convincing evidence.

10. **Disciplinary Proceedings: Rules of the Supreme Court.** Collectively, subsections (a) and (b) of Neb. Ct. R. of Prof. Cond. § 3-501.15 prohibit the commingling of client funds with an attorney's personal funds.

11. **Disciplinary Proceedings.** Generally speaking, an attorney violates the rule against commingling when the funds of the client are intermingled with those of the attorney in such a way that their separate identity is lost and they may be used by the attorney for personal expenses or subjected to the claims of the attorney's creditors.

12. **Disciplinary Proceedings: Proof: Circumstantial Evidence.** Disciplinary violations can be proved by circumstantial evidence.

13. **Disciplinary Proceedings: Attorneys at Law.** In the context of attorney discipline cases, the Nebraska Supreme Court has repeatedly recognized the ancient maxim that ignorance of the law is no excuse. It is a maxim sanctioned by centuries of experience and it applies with even greater emphasis to an attorney at law who is expected to be learned in the law.

14. **Disciplinary Proceedings.** Neither good faith nor ignorance of the rules prohibiting commingling client and personal funds provides a defense to a disciplinary charge that an attorney violated the rules against commingling.

15. \_\_\_\_. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

16. \_\_\_\_. Each attorney discipline case must be evaluated in light of its particular facts and circumstances.

17. \_\_\_\_. For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.

- 908 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
300 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

18. ____. In attorney discipline cases, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.

19. **Disciplinary Proceedings: Rules of the Supreme Court.** Under Neb. Ct. R. § 3-304, the Nebraska Supreme Court may impose one or more of the following disciplinary sanctions: (1) disbarment; (2) suspension; (3) probation, in lieu of or subsequent to suspension; (4) censure and reprimand; or (5) temporary suspension.

20. **Disciplinary Proceedings.** The Nebraska Supreme Court considers commingling of client funds with an attorney's own funds to be a matter of gravest concern in reviewing claims of lawyer misconduct.

21. ____. The goal of attorney discipline proceedings is not as much punishment as a determination of whether it is in the public interest to allow an attorney to keep practicing law.

22. ____. Providing for the protection of the public requires the imposition of an adequate sanction to maintain public confidence in the bar.

23. ____. An attorney's admission of responsibility for his or her actions reflects positively upon his or her attitude and character and is to be considered in determining the appropriate discipline.

24. ____. Because cumulative acts of attorney misconduct are distinguishable from isolated incidents, they justify more serious sanctions. Cumulative acts of misconduct can, and often do, lead to disbarment.

25. **Disciplinary Proceedings: Words and Phrases.** In the context of attorney disciplinary proceedings, misappropriation is any unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives any personal gain or benefit therefrom.

26. **Disciplinary Proceedings.** Lack of financial harm to clients is not a mitigating factor in disciplinary proceedings where an attorney has commingled client and personal funds.

27. ____. Absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.

28. **Disciplinary Proceedings: Presumptions.** Mitigating factors may overcome the presumption of disbarment in misappropriation and commingling cases where they are extraordinary and substantially outweigh any aggravating circumstances.

Original action. Judgment of disbarment.

William F. Austin, Special Prosecutor, of Blake & Austin Law Firm, L.L.P., for relator.

- 909 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

John C. Nimmer, pro se.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Dobrovolny, District Judge.

Per Curiam.

On February 1, 2017, the Counsel for Discipline of the Nebraska Supreme Court filed formal charges against John C. Nimmer, alleging he violated Neb. Ct. R. of Prof. Cond. §§ 3-501.15 and 3-508.4 (rev. 2016) and his oath of office as an attorney licensed to practice in Nebraska[1] by commingling personal funds with client trust account funds. This court appointed a referee who held an evidentiary hearing and then filed a report finding Nimmer had violated the disciplinary rules by depositing personal funds into his client trust account and using his client trust account to pay personal expenses. The referee recommended a 1-year suspension followed by a 2-year period of probation. Nimmer filed an exception to the referee's report, challenging both the finding that he violated the disciplinary rules and the recommended sanction.

We find by clear and convincing evidence that Nimmer commingled client funds with personal funds, in violation of §§ 3-501.15 and 3-508.4 of the Nebraska Rules of Professional Conduct and his oath of office. Furthermore, we conclude on this record that the appropriate sanction for Nimmer's misconduct is disbarment.

## I. BACKGROUND

Nimmer was admitted to the practice of law in the State of Nebraska in 1993, and since that time has practiced primarily in Omaha and Bellevue, Nebraska. In 2004, Nimmer opened a client trust account at an Omaha area bank. The manner in which Nimmer has used that client trust account is the central issue in this disciplinary proceeding.

---

[1] See Neb. Rev. Stat. § 7-104 (Reissue 2012).

- 910 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

## 1. Grievance and Investigation

In a letter dated March 11, 2016, the enforcement division of the U.S. Securities and Exchange Commission (SEC) notified the Counsel for Discipline of "possible professional misconduct" by Nimmer. The SEC had subpoenaed records from Nimmer's client trust account in connection with an unrelated investigation and reported that its "review of Nimmer's trust account transactions revealed that he wrote numerous checks for personal expenses, ranging from rent and child support to dog boarding and landscaping fees." On March 18, the Counsel for Discipline notified Nimmer that he was the subject of an investigation and provided him a copy of the grievance.[2]

On June 8, 2016, the Counsel for Discipline provided Nimmer with copies of the bank records subpoenaed by the SEC and asked him to explain several checks written on his client trust account that did not appear to be client related. Nimmer was also asked to explain a $10,000 check from his mother with the memorandum notation "loan" which had been deposited into his client trust account. Nimmer declined, at the time, to answer the questions posed by the Counsel for Discipline.

The Counsel for Discipline then subpoenaed Nimmer's client trust account records directly from the bank. Through two subpoenas, records were obtained for the time period from January 1, 2006, through September 1, 2016. After reviewing these records, the Counsel for Discipline determined there were reasonable grounds for discipline, and thus reduced the SEC's grievance to a complaint and forwarded it to the Committee on Inquiry of the Fourth Judicial District.[3] Thereafter, the inquiry panel found reasonable grounds for discipline and determined it would be in the public's interest to file formal charges.[4]

---

[2] See Neb. Ct. R. § 3-309(D) (rev. 2011).

[3] See § 3-309(G).

[4] See § 3-309(H)(4).

- 911 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

## 2. Formal Charges

On February 1, 2017, the Counsel for Discipline filed formal charges against Nimmer. It alleged that between January 2006 and February 2016, Nimmer wrote personal checks on his client trust account to 29 different businesses, individuals, and organizations. Additionally, it alleged that on December 20, 2007, Nimmer deposited a $10,000 check from his mother issued to him with the notation "loan" into his client trust account. The formal charges alleged that by using his client trust account in this fashion, Nimmer commingled his personal funds with client funds and thereby violated his oath of office as an attorney licensed to practice in Nebraska[5] and § 3-501.15, which provides in part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of 5 years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.

The formal charges also alleged Nimmer's actions violated § 3-508.4, which provides in relevant part that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct."[6]

---

[5] See § 7-104.

[6] § 3-508.4(a).

### 3. Nimmer Moves to Dismiss and Recuse

Nimmer filed a motion to dismiss the formal charges, alleging the Counsel for Discipline "is part of the Nebraska judicial branch under the direct supervision of this Court, which violates separation of powers, which violates constitutional due process, which in turn negates [the Counsel for Discipline] from having standing to have filed the Formal Charges, thereby constituting a lack of subject matter jurisdiction." This court overruled Nimmer's motion to dismiss as meritless.[7]

Nimmer also moved to recuse the Counsel for Discipline, alleging he had a conflict of interest because Nimmer planned to call him as a necessary fact witness. We overruled his motion to recuse, but determined it was prudent under the circumstances to appoint a special prosecutor.

### 4. Nimmer Files Answer and Second Motion to Dismiss

After his motion to dismiss was overruled, Nimmer filed a verified answer to the formal charges. His answer admitted some of the factual allegations in the formal charges, but generally denied that his conduct amounted to commingling in violation of the disciplinary rules. Additionally, Nimmer's answer raised several affirmative defenses which will be addressed later in this opinion.

Nimmer also filed a second motion to dismiss, this time asking that the disciplinary proceeding be dismissed without prejudice due to alleged procedural errors predating the filing of the formal charges. This court found the motion was meritless and overruled it.

---

[7] See, e.g., *Noffsinger v. Nebraska State Bar Assn.*, 261 Neb. 184, 622 N.W.2d 620 (2001) (matters regarding admission, suspension, discipline and disbarment of attorneys rest exclusively with Nebraska Supreme Court; in exercising its inherent power to regulate bar, court uses Counsel for Discipline to investigate allegations of misconduct and to prepare, file, and dismiss charges of misconduct against attorneys).

- 913 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

### 5. Nimmer Seeks to Exclude Client Trust Account Records

Nimmer filed "Motions to Quash Subpoenas and Exclude Evidence," seeking to prevent his client trust account records from being offered at the disciplinary hearing. He argued the records had been obtained improperly and suggested the SEC had violated federal privacy laws when it provided his trust account records to the Counsel for Discipline in connection with the grievance. Nimmer acknowledged that after receiving the grievance, the Counsel for Discipline independently subpoenaed the trust account records as part of the disciplinary investigation.[8] Nimmer did not claim those subpoenas were unreasonable or oppressive,[9] but argued he did not have an opportunity to object and thus asked that all records produced in response to those subpoenas be excluded.

Additionally, Nimmer asked that any client trust account records more than 5 years old be excluded even if more recent records were admitted. In support, Nimmer relied on § 3-501.15(a), which requires attorneys to maintain complete records of client property for 5 years after termination of the representation. Nimmer claimed that because he had not retained any client records predating 2011, the Counsel for Discipline should be prevented from offering any subpoenaed trust account records for that period.

The referee found no merit to Nimmer's arguments for exclusion of the subpoenaed trust account records and overruled the motions.

### 6. Evidentiary Hearing

On December 4, 2017, an evidentiary hearing was held on the formal charges. Nimmer represented himself and was the only witness to testify.

---

[8] See Neb. Ct. R. § 3-317(A).

[9] See § 3-317(D).

### (a) Exhibits

The special prosecutor introduced, and the referee received, Nimmer's client trust account records from 2006 through 2016. Nimmer did not dispute the veracity of those records and instead stated, "I'll concede every transaction in this exhibit is a bona fide transaction. Whatever the notations say, they say. . . . [T]he exhibit speaks for itself."

The special prosecutor also introduced, and the referee received, a record of a prior attorney disciplinary proceeding involving Nimmer. In 2013, the Counsel for Discipline alleged Nimmer had received $12,500 from a client to deliver "qualified investors" as advertised on his website and then failed to provide such services.[10] Nimmer's actions were alleged to have violated Neb. Ct. R. Prof. Cond. § 3-507.1 and § 3-508.4(a).[11] Nimmer entered a conditional admission to the 2013 charges and requested a public reprimand.[12] This court accepted his conditional admission and issued a public reprimand.[13]

### (b) Nimmer's Testimony

As stated, at the hearing, Nimmer did not dispute the veracity of the client trust account records or the accuracy of the notations on various checks deposited into and written on the client trust account. For instance, Nimmer admitted writing numerous checks for personal expenses from his client trust account over the course of several years, including checks for rent, checks to his church, checks to his mother, and checks for his daughter's summer camp. He also admitted his mother had given him thousands of dollars that he deposited into his client trust account. Nimmer characterized these deposits as "credit line[s]," rather than "loan[s]" from his mother, but he admitted the funds were placed into his client

---

[10] *State ex rel. Counsel for Dis. v. Nimmer*, 286 Neb. 107, 834 N.W.2d 776 (2013).

[11] *Id.*

[12] *Id.*

[13] *Id.*

- 915 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

trust account and were available for his personal use "or hers, if she asked."

Nimmer also admitted that on several occasions, he transferred funds from his personal checking account into his client trust account. He admitted these funds were not transferred to pay bank service charges and were not connected to the representation of any client.

### (c) Nimmer's Affirmative Defenses

While Nimmer did not vigorously contest the documentary evidence detailing the non-client-related funds going into and out of his client trust account, he did argue that this activity did not amount to unlawful commingling. In support of this contention, Nimmer advanced three basic arguments, which he framed as affirmative defenses. First, he argued that writing personal checks directly from his client trust account was not a violation of § 3-501.15, because it was possible he was writing those checks on earned fees. Second, he argued § 3-501.15 does not prohibit attorneys from depositing non-client-related funds into a client trust account. And third, he argued that even if the referee found he had violated the rules against commingling personal and client funds, he acted in "good faith" and thus should be exempt from discipline. He makes these same arguments in his briefing to this court, and we address them later in our analysis.

### 7. Referee's Report and Recommendation

On February, 13, 2018, the referee filed his written report. The referee found, summarized, that from January 1, 2006, through September 1, 2016, Nimmer impermissibly deposited personal funds into his client trust account in amounts more than necessary to pay bank service charges on that account and used his client trust account to pay personal expenses. It is not necessary to recite all of the referee's factual findings, but the following are representative:

- 916 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
300 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

• On or about December 20, 2007, Nimmer deposited a $10,000 check from his mother with the notation "'loan'" into his client trust account. Nimmer admitted these funds were for his personal use, but were also available to pay his mother's personal expenses if she asked. In that regard, Nimmer wrote a check from the client trust account in the amount of $4,775 to a construction company for repairs to his mother's house, and wrote several checks to his mother for a car he was purchasing from her. None of these checks or transactions were connected to representation of a client.

• On or about June 25, 2013, Nimmer deposited two checks totaling $10,855.18 into his client trust account. The checks had been made payable to Nimmer's mother, and she endorsed both checks over to him. Nimmer described this deposit as a "'credit line'" from his mother. He admitted the funds were not connected to the representation of any client, but, rather, were intended to be used by Nimmer for his personal expenses if necessary.

• On multiple occasions in 2014 and 2016, Nimmer transferred money from his personal checking account into his attorney trust account. Nimmer admitted these transfers were not to pay bank fees and were not in connection with any client representation, but he claimed the transfers were "for the benefit of" his daughter.

• Nimmer wrote approximately 35 checks on his client trust account to his church, with notations such as "dues," "Almsgiving Fund," "dinner tickets," and "Food for Hungry Funds." Nimmer admitted the notations on the checks were accurate and the payments were not made in connection with client representation.

• Nimmer wrote multiple checks over multiple years out of his client trust account to Camp St. Raphael. Nimmer admitted those checks were for his daughter's summer camp and were not connected to any client representation.

• Nimmer wrote approximately 20 checks on his client trust account payable to the landlord of his Omaha law office

- 917 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

in the amount of either $1,750, $2,000, or some multiple thereof. Nimmer admitted these checks were "'most probably'" for his rent.

Based on these and other factual findings, the referee concluded there was clear and convincing evidence Nimmer violated §§ 3-501.15(a) and (b) (safekeeping property) and 3-508.4 (misconduct), and thereby violated his oath of office as a licensed attorney. The referee expressly rejected all of Nimmer's affirmative defenses.

The referee also made a recommendation regarding an appropriate sanction. The referee analyzed each of the six factors outlined in *State ex rel. Counsel for Dis. v. Jorgenson*[14] and found several aggravating factors, including that (1) Nimmer had been disciplined previously in 2013, (2) Nimmer's misconduct in commingling client funds and personal funds went on for nearly a decade, and (3) Nimmer had written "a large number of checks" for personal expenses on his client trust account. The referee found as a mitigating factor that Nimmer had not "misappropriate[d] any client funds." Ultimately, the referee recommended that Nimmer be (1) suspended from the practice of law for a period of 1 year, (2) required to complete 6 credit hours of continuing legal education in the area of professional responsibility focused on law office management prior to reinstatement, and (3) placed on probation for 2 years during which time he must practice under the supervision of a licensed Nebraska attorney.

Nimmer timely filed a written exception to the referee's report, the particulars of which we address below. The matter has been briefed and argued before this court[15] and now is submitted for our determination on the questions of which, if any,

---

[14] *State ex rel. Counsel for Dis. v. Jorgenson*, 298 Neb. 855, 906 N.W.2d 43 (2018).

[15] See Neb. Ct. R. § 3-310(M) (rev. 2014).

Nebraska Rules of Professional Conduct were violated and the appropriate sanction for any such violation.[16]

## II. STANDARD OF REVIEW

[1] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[17]

## III. ANALYSIS

### 1. Nimmer's Exceptions
### to Referee's Report

Nimmer's written exceptions challenge nearly every aspect of the referee's report. Consolidated and summarized, Nimmer takes exception to the referee's (1) evidentiary rulings, including admitting the subpoenaed records of Nimmer's client trust account; (2) finding clear and convincing evidence of disciplinary violations; (3) rejecting Nimmer's affirmative defenses; and (4) recommending a 1-year suspension.

Nimmer's brief addresses these exceptions as "assignments of error" made by the referee, but we decline to address them framed as such, because we do not sit in this matter as an appellate court reviewing the record for error. Rather, proceedings for attorney discipline are original proceedings before the Nebraska Supreme Court.[18]

In such original proceedings, when an answer raises an issue of fact requiring a hearing, we refer the matter to a referee to

---

[16] *State ex rel. Counsel for Dis. v. Herzog*, 281 Neb. 816, 805 N.W.2d 632 (2011). See, also, *State ex rel. Counsel for Discipline v. Gast*, 296 Neb. 687, 696-97, 896 N.W.2d 583, 591 (2017) ("[t]he basic issues in a disciplinary proceeding against an attorney are whether the Nebraska Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances").

[17] *State ex rel. Counsel for Dis. v. Trembly, ante* p. 195, 912 N.W.2d 764 (2018).

[18] § 3-310(C).

- 919 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

oversee discovery and hold a hearing.[19] The referee observes the rules of evidence, discovery, and motion practice applicable in civil actions in Nebraska district courts and is required to make a written report stating his or her findings of fact and recommendations.[20] The referee's report is transmitted to this court along with the record of proceedings,[21] and if no written exception is taken, this court may, in its discretion, accept the referees' findings as final and conclusive.[22]

[2] But where, as here, a party takes exception to the referee's report, this court conducts a trial de novo on the record in which we reach a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[23] Because of this standard, Nimmer's claims of errors by the referee are simply "immaterial to our review."[24]

We thus proceed to consider Nimmer's exceptions, but we necessarily limit our consideration to the evidence properly admitted, and we reach our own conclusion, independent of the referee's findings and recommendation, on the central questions of whether any Nebraska Rules of Professional Conduct have been violated, and the appropriate sanction for any such violation.[25]

For the sake of completeness, we also note that Nimmer's brief assigns error to this court's prior decisions overruling his

---

[19] See § 3-310(J).

[20] *Id.*

[21] *Id.*

[22] § 3-310(L).

[23] *Herzog, supra* note 16.

[24] *Id*. at 822, 805 N.W.2d at 637.

[25] *Id.*

- 920 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

two motions to dismiss this disciplinary proceeding. We construe these assignments as requests for this court to exercise its inherent authority to reconsider those decisions,[26] and we decline to do so.

## 2. Nimmer's Client Trust Account
## Records Were Properly Admitted

Throughout the proceedings before the referee, and in his briefing and oral argument before this court, Nimmer has repeatedly challenged the admissibility of his client trust account records, particularly those predating 2011. The referee found all of Nimmer's arguments in this regard to be without merit. We do too.

[3] With exceptions not relevant here, all lawyers admitted to practice law on active status with an office in Nebraska must have and maintain a client trust account in an approved financial institution.[27] Additionally, the Counsel for Discipline has the broad power to "audit at any time any trust account required by these rules."[28] And we have recognized that client trust accounts, in particular, are always open to review by the Counsel for Discipline.[29] The Counsel for Discipline has broad subpoena power for investigative purposes,[30] and in this case, the Counsel for Discipline followed the appropriate procedure in subpoenaing Nimmer's client trust account records.[31]

Nimmer also argues that even if his client trust account records were properly obtained, all such records before 2011

---

[26] See *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018) (appellate court has inherent power to reconsider order or ruling until divested of jurisdiction).

[27] Neb. Ct. R. § 3-902.

[28] Neb. Ct. R. § 3-906.

[29] *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 827 N.W.2d 214 (2013).

[30] § 3-317(A).

[31] § 3-317(B).

- 921 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
300 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

should nevertheless have been excluded from evidence. He reasons that § 3-501.15(a) requires lawyers to preserve records of client trust accounts "for a period of 5 years after termination of the representation." Nimmer maintains that in reliance on this rule, he did not save client subsidiary ledgers prior to 2011; thus, he argues it would be "unfair" to allow disciplinary proceedings against him based on allegations of commingling more than 5 years ago.

[4,5] Nimmer's reliance on the document preservation requirement in § 3-501.15(a) is misplaced. An attorney's failure to preserve client trust account records does not provide an affirmative defense to charges of impermissible commingling, nor does the 5-year preservation rule constrain or limit the Counsel for Discipline's investigative or prosecutorial duties. There is no time limitation on the acts or omissions that can give rise to attorney discipline for violating the Nebraska Rules of Professional Conduct, the attorney's oath, or the provisions of Nebraska's disciplinary rules.[32]

Moreover, Nimmer repeatedly points to the document preservation rule as the reason he is unable to adequately explain the personal funds going into and out of his client trust account. But we have difficulty with his suggestion that client ledgers would reveal anything of relevance, given the nature of the charges here. The alleged disciplinary violations stem from Nimmer's impermissible use of his client trust account as a personal checking account; such use, by its nature, would not have been documented in client ledgers. And it is telling that despite the availability of his post-2011 client ledgers, Nimmer points to nothing in those records that adequately explains the violations found to have occurred during that timeframe.

We conclude that all of Nimmer's client trust account records from the period from 2006 through 2016 were properly obtained by the Counsel for Discipline, were provided to

---

[32] See Neb. Ct. R. § 3-303.

- 922 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
300 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

Nimmer well in advance of the hearing, were properly admitted into evidence by the referee, and are properly before this court for consideration.

### 3. GENERAL PRINCIPLES IN DISCIPLINARY PROCEEDINGS

[6-9] Attorneys licensed to practice law in the State of Nebraska agree to operate under the supervision of the office of the Counsel for Discipline.[33] A license to practice law confers no vested right, but is a conditional privilege, revocable for cause.[34] Violation of any of the ethical standards relating to the practice of law or any conduct of an attorney in his or her professional capacity which tends to bring reproach on the courts or the legal profession constitutes grounds for suspension or disbarment.[35] Violation of those standards, which are set forth in the disciplinary rules, must be established by clear and convincing evidence.[36]

### 4. THERE IS CLEAR AND CONVINCING EVIDENCE OF VIOLATIONS

Our de novo review shows clear and convincing evidence that Nimmer violated § 3-501.15(a) and (b), and thereby violated § 3-508.4(a) and his oath of office under § 7-104.

Section 3-501.15(a) requires a lawyer to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." This rule requires that client "[f]unds shall be kept in a separate account maintained in the state where the lawyer's office is situated."

Section 3-501.15(b) recognizes one circumstance under which it is permissible for an attorney to deposit his or her own funds into a client trust account. "A lawyer may deposit

---

[33] *Crawford, supra* note 29.

[34] *Id.*

[35] *Id.*

[36] *Id.*

- 923 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose."

[10,11] Collectively, subsections (a) and (b) of § 3-501.15 prohibit the commingling of client funds with an attorney's personal funds. Generally speaking, an attorney violates the rule against commingling when the funds of the client are intermingled with those of the attorney in such a way that their separate identity is lost and they may be used by the attorney for personal expenses or subjected to the claims of the attorney's creditors.[37]

In *State ex rel. Counsel for Dis. v. Davis*,[38] we found clear and convincing evidence of commingling in violation of § 3-501.15(a) and (b) when the attorney used her client trust account as both a business account and a personal checking account. We reach the same conclusion in the present case.

Here, the record is replete with evidence that Nimmer used his client trust account as a personal checking account. From 2006 through 2016, Nimmer deposited thousands of dollars in personal funds into his client trust account. Some of these personal funds were from his mother and some were transferred directly from his personal checking account, but none were for the sole purpose of paying bank service charges on the account.

Nimmer regularly wrote checks on his client trust account for personal and business expenses. Much of this evidence was admitted by Nimmer and has been summarized in the referee's findings recited previously. But in addition to the referee's findings, our de novo review reveals considerable circumstantial evidence that Nimmer's use of his client trust account as a personal checking account was more pervasive than the referee's report would suggest. Given the volume

---

[37] Annot., 94 A.L.R.3d 846, § 3 (1979 & Supp. 2018).

[38] *State ex rel. Counsel for Dis. v. Davis*, 276 Neb. 158, 760 N.W.2d 928 (2008).

- 924 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
300 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

of that circumstantial evidence, we cite a few representative examples.

From 2005 through 2009, Nimmer wrote 19 checks on his client trust account to the Omaha Public Power District. He testified these checks were "more likely than not" his utility payments, but claimed that without his pre-2011 subsidiary trust account records, he could not be certain.

From 2006 through 2009, Nimmer wrote 27 checks on his client trust account to "Cox Communications." Nimmer testified that Cox Communications was his current Internet service provider and was not a client of his, but he could not remember whether he had the same provider at the time the checks were written and did not want to "venture a guess."

Nimmer wrote a check to his ex-wife on the client trust account with the notation "Jan./Feb. health ins." Nimmer testified this check "may have" been a payment to his ex-wife for his daughter's health insurance, but he did not "remember for sure." Additionally, Nimmer wrote at least 22 other checks to his ex-wife, many with notations such as "camp," "daycamp," "Rachel's camp," "travel," and "cookies." Nimmer admitted these checks were not related to any client representation, but when asked if the checks represented personal payments on behalf of his daughter, Nimmer replied, "I'm not going to characterize them that way." Nimmer himself offered several exhibits documenting payments he made from his client trust account in 2011, 2013, 2014, and 2016 for his daughter's summer camp.

Nimmer wrote approximately 15 checks from his client trust account to "Cricket." Nimmer testified, "I think Cricket is a cell phone provider," but he did not recall why he had written the checks.

In 2007, Nimmer wrote a check from his client trust account to the Nebraska State Bar Association in the amount of $320. When asked whether he was paying his bar dues out of his client trust account, Nimmer replied, "There is no notation that allows me to say for sure."

- 925 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

[12] Disciplinary violations can be proved by circumstantial evidence,[39] and in this case, we find considerable direct and circumstantial evidence which provides clear and convincing proof that Nimmer commingled client and personal funds in his client trust account and used his client trust account as a personal checking account. This misuse of his client trust account violated § 3-501.15(a) and (b). And by doing so, Nimmer also violated § 3-508.4(a) and his oath of office under § 7-104.

### 5. No Merit to Nimmer's Affirmative Defenses

Nimmer does not deny depositing non-client-related funds into his client trust account, nor does he deny paying personal expenses for himself, his mother, and his daughter out of his client trust account. Instead, Nimmer raises several arguments, framed as affirmative defenses, which he contends preclude a finding that he used his client trust account in violation of the Nebraska Rules of Professional Conduct. We address his arguments below, and find all to be meritless.

### (a) Earned Fees

Nimmer's verified answer alleged "it is possible though unlikely [I] may have paid some personal expenses from fees as earned—though without recourse to subsidiary ledgers it is impossible to link specific transactions to specifically earned fees." Before the referee and in his briefing to this court, Nimmer argues that it is possible he was writing personal checks on earned fees. He offered no contemporaneous billings or other credible evidence to support such a theory. And even assuming that some of the funds in Nimmer's client trust account may have represented earned fees, Nimmer did not withdraw legal fees and expenses from the client trust account

---

[39] *Crawford, supra* note 29 (demonstrating that even evidence which is largely circumstantial, disputed, and complicated can nonetheless be clear and convincing).

- 926 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

as they were earned to place them in an operating account.[40] Instead, he wrote checks for personal expenses directly from his client trust account and now attempts to defend his actions by suggesting it is possible he was using earned fees. We reject this affirmative defense as speculative and unproven, and even if Nimmer had offered sufficient proof of earned fees, it would not have excused or explained his commingling.

### (b) "Third-Party" Funds

Nimmer argues he did not violate § 3-501.15 by depositing personal funds into his client trust account, because, he contends, any funds deposited were not his personal funds, but instead belonged to nonclient "third parties," such as his daughter and his mother. His attempt to characterize personal loans from his mother and funds from his personal checking account as anything other than his "own funds" is disingenuous. But even more troubling is Nimmer's proffered interpretation of § 3-501.15(a).

In Nimmer's answer, he "affirmatively avers holding third party funds in an attorney trust account not in connection with legal representation is not prohibited." In his arguments to this court, Nimmer contends that § 3-501.15(a) permits an attorney to deposit "third party" funds into a client trust account, even if such funds are unconnected to representing a client. We disagree, and reject Nimmer's position as patently contrary to the plain language of § 3-501.15(a).

Section 3-501.15(a) plainly requires that property of "clients" and property of "third persons . . . in a lawyer's possession in connection with a representation" shall be kept separate from the lawyer's own property and that all "[f]unds" must be kept "in a separate account" and all "[o]ther property" must be "identified as such and appropriately safeguarded."

While this rule references "third persons," it does so only in the context of funds in the lawyer's possession "in connection

---

[40] See § 3-501.15(c).

- 927 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

with a [client] representation." Additionally, the client trust account here was an interest-bearing trust account subject to additional rules found in chapter 3, article 9, of this court's rules. Those rules make clear that such accounts are for "the deposit of funds of clients"[41] and not, as Nimmer suggests, for holding "third-party" funds that have no connection to the representation of a client.

Nimmer's proposed interpretation of § 3-501.15(a) borders on frivolous and provides no defense to commingling.

### (c) No "[G]ood [F]aith" Defense
### to Commingling

Finally, Nimmer argues that if we determine his use of the client trust account violated § 3-501.15(a) and (b) by commingling personal and client funds, then a "good faith" defense should apply to protect him from discipline, because, he contends, the commingling provisions of § 3-501.15(a) are not sufficiently clear. The referee found that the "good faith" defense, sometimes relied upon in defending legal malpractice cases, did not apply to protect Nimmer from the consequences of violating clear disciplinary rules prohibiting the commingling of client and personal funds. We agree.

Although we have recognized a "good faith" defense to civil liability in legal malpractice claims when the law is not well settled,[42] we have not applied such a defense in the attorney discipline context, and for good reason. It has no proper application.

[13] In the context of attorney discipline cases, "'[w]e have repeatedly recognized the ancient maxim that ignorance of the law is no excuse. It is a maxim sanctioned by centuries of experience [and it] applies with even greater emphasis

---

[41] See § 3-902.

[42] See *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998).

- 928 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

to an attorney at law who is expected to be learned in the law.'"[43]

[14] Simply put, neither good faith nor ignorance of the rules prohibiting commingling client and personal funds provides a defense to a disciplinary charge that an attorney violated the rules against commingling.[44] The District of Columbia Court of Appeals explained it well: "If a failure to understand the most central Rules of Professional Conduct could be an acceptable defense for a charged violation, even in cases of good faith mistake, the public's confidence in the bar and, more importantly, the public's protection against lawyer overreaching would diminish considerably."[45]

We agree with this reasoning. Nimmer cannot avoid disciplinary sanctions for violating the fundamental rules prohibiting commingling by relying on a "good faith" defense.

## 6. Appropriate Sanction

Having concluded Nimmer violated the Nebraska Rules of Professional Conduct and his oath of office by commingling client and personal funds, we must determine the appropriate sanction.

[15,16] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.[46] Each attorney discipline

---

[43] *State ex rel. Nebraska State Bar Assn. v. Hollstein*, 202 Neb. 40, 58, 274 N.W.2d 508, 518 (1979).

[44] 94 A.L.R.3d, *supra* note 37, § 10 (and cases cited therein).

[45] *In re Smith*, 817 A.2d 196, 202 (D.C. 2003).

[46] *Trembly, supra* note 17.

- 929 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

case must be evaluated in light of its particular facts and circumstances.[47]

[17,18] For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.[48] The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[49]

[19] Under Neb. Ct. R. § 3-304, this court may impose one or more of the following disciplinary sanctions: "(1) Disbarment by the Court; or (2) Suspension by the Court; or (3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or (4) Censure and reprimand by the Court; or (5) Temporary suspension by the Court[.]"

### (a) Nature of Offense

[20] This court considers commingling of client funds with an attorney's own funds to be a matter of gravest concern in reviewing claims of lawyer misconduct.[50] We have recognized:

> The prohibition against commingling of funds is a salutary rule adopted "'to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of clients' money. Moral turpitude is not necessarily involved in the commingling of a client's money with an attorney's own money if the client's money is not endangered by such procedure and is always available to him. However, inherently there is danger in such practice for

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984).

- 930 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

frequently unforeseen circumstances arise jeopardizing the safety of the client's funds, and as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the attorney.'"[51] Even when the client suffers no loss, commingling client funds with personal funds is not a trivial or technical rule violation.[52]

### (b) Need for Deterring Others

It has been suggested that violating the rule against commingling is one of the most frequent bases for disciplinary action against attorneys.[53] As such, we agree with the referee that the need to send a clear and strong message deterring others from commingling client and personal funds, and from using client trust accounts as personal checking accounts, is paramount. It has been observed: "'In most jurisdictions, disciplinary authorities treat violations of the rule against commingling trust funds and personal funds very seriously . . . even where the client or third party suffers no loss, harsh sanctions usually follow as a prophylactic warning that com[m]ingling cannot be tolerated.'"[54]

### (c) Reputation of Bar

The referee correctly observed that misuse of client trust accounts, even when it does not involve obvious misappropriation, harms the reputation of the entire legal profession by undermining public confidence and trust in attorneys, in the courts, and in the legal system generally.

---

[51] *Id.* at 142, 352 N.W.2d at 878.

[52] See *Disciplinary Proceedings Against Mulligan*, 365 Wis. 2d 43, 870 N.W.2d 233 (2015).

[53] 94 A.L.R.3d, *supra* note 37, § 2.

[54] See *Disciplinary Proceedings Against Mulligan, supra* note 52, 365 Wis. 2d at 61-62, 870 N.W.2d at 242.

- 931 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

### (d) Protection of Public

[21,22] The goal of attorney discipline proceedings is not as much punishment as a determination of whether it is in the public interest to allow an attorney to keep practicing law.[55] Providing for the protection of the public requires the imposition of an adequate sanction to maintain public confidence in the bar.[56]

### (e) Attitude of Respondent

The referee found that although Nimmer had not admitted his violations, he conceded that "he may have exercised poor judgment." The referee thus concluded, "It appears that [Nimmer] is open to the need to seriously correct his practices regarding his trust account management, but a period of suspension is necessary to impress upon him the critical need to do so."

[23] An attorney's admission of responsibility for his or her actions reflects positively upon his or her attitude and character and is to be considered in determining the appropriate discipline.[57] But while we consider and give weight to the referee's observations, our de novo review of the record suggests that, rather than displaying remorse for his actions and an openness to changing the behavior that prompted this disciplinary proceeding, Nimmer has generally refused to acknowledge the wrongful nature of his conduct in commingling client and personal funds.

Nimmer has challenged this court's authority to discipline him and repeatedly tried to prevent consideration and review of his client trust account records. While lawyers facing disciplinary charges should not be discouraged in any way from mounting a vigorous defense, some of the legal positions

---

[55] *Trembly, supra* note 17.

[56] *Id.*

[57] *State ex rel. Counsel for Dis. v. Petersen*, 271 Neb. 262, 710 N.W.2d 646 (2006).

advanced by Nimmer in this proceeding border on the frivo-
lous and reflect an attitude which bears negatively on his
willingness to conform his conduct to the Nebraska Rules of
Professional Conduct.

### (f) Present or Future Fitness to Practice Law

The referee observed that Nimmer "conducted himself dur-
ing the proceedings appropriately and with knowledge of the
law and procedure" and thus found "no evidence to suggest
that Nimmer is not fit to practice law." Although we con-
sider and give weight to the fact that the referee heard and
observed Nimmer's conduct during these proceedings, we
cannot ignore that Nimmer's actions in using his client trust
account as a personal checking account demonstrated contin-
ued indifference to the fundamental rule against commingling,
which we conclude bears negatively on his future fitness to
practice law.

### (g) Aggravating Factors

We agree with the referee that the record supports several
aggravating factors. Nimmer has already been publicly repri-
manded by this court for a violation of the Nebraska Rules of
Professional Conduct in a prior disciplinary proceeding.[58]

[24] Moreover, the extended period of time over which
Nimmer engaged in commingling, and the large number of
personal checks Nimmer wrote on his client trust account,
are additional aggravating factors. Nimmer did more than
commingle on one or two occasions—he engaged in a pat-
tern of conduct that spanned nearly a decade and involved
hundreds of checks totaling thousands of dollars. Because
cumulative acts of attorney misconduct are distinguishable
from isolated incidents, they justify more serious sanctions.[59]

---

[58] See *Nimmer, supra* note 10.

[59] *State ex rel. Counsel for Dis. v. Walocha*, 283 Neb. 474, 811 N.W.2d 174
(2012).

- 933 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

Cumulative acts of misconduct can, and often do, lead to disbarment.[60]

### (h) Mitigating Factors

[25] The referee found "the central mitigating fact in this case is that Nimmer did not misappropriate any client funds." We have defined misappropriation as any unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives any personal gain or benefit therefrom.[61]

Nimmer was not charged with misappropriation of client funds, but we do not agree this is a mitigating factor. We note that after the years of commingling that occurred here, it would be difficult to discern whether any client funds were misappropriated. Sometimes an attorney can "so inextricably com[m]ingle[] client and personal funds" in his or her trust account that "it is impossible to know which or whose funds were being used at any particular time."[62]

[26] Here, we understand the referee's observation that Nimmer "did not misappropriate any client funds" to mean the referee saw no evidence that Nimmer's client trust account was overdrawn or that clients suffered documented financial loss. But we have been clear that lack of financial harm to clients is not a mitigating factor in commingling cases:

> [A] lawyer's poor accounting procedures and sloppy office management are not excuses or mitigating circumstances in reference to commingled funds. The fact that the client did not suffer any financial loss . . . does not provide a reason for imposing a less severe sanction."[63]

---

[60] *Id.*

[61] *Crawford, supra* note 29.

[62] See *Disciplinary Proceedings Against Mulligan, supra* note 52, 365 Wis. 2d at 63-64, 870 N.W.2d at 243.

[63] *Crawford, supra* note 29, 285 Neb. at 365, 827 N.W.2d at 245.

Fortunately, there was no evidence that Nimmer's clients suffered a financial loss as a result of his commingling of funds. However, we must respectfully disagree with the referee that this should be considered a mitigating factor. And we see nothing in the record, or the briefing, that suggests any other mitigating factor.

### (i) Other Cases

In *State ex rel. Counsel for Dis. v. Davis*,[64] we suspended an attorney for 1 year after finding by clear and convincing evidence that she used her client trust account as a business and personal checking account and failed to promptly deliver trust account funds to a client's health care provider. That case, however, involved several mitigating factors including: the attorney suffered from depression and anxiety, the attorney was an alcoholic and agreed to undergo treatment, the attorney had no prior disciplinary actions, and the referee received multiple letters from the community attesting to the attorney's good character and reputation.[65]

In *State ex rel. NSBA v. Veith*,[66] we disbarred an attorney after finding by clear and convincing evidence that he commingled, and misappropriated, client funds. In doing so, we disagreed with the referee's recommended discipline of an 8-month suspension.[67] And we found disbarment was appropriate even though the attorney had reimbursed his clients.[68]

In *State ex rel. NSBA v. Malcom*,[69] we disbarred an attorney after finding by clear and convincing evidence that he

---

[64] *Davis, supra* note 38.

[65] *Id.*

[66] *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991).

[67] *Id.*

[68] *Id.*

[69] *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997).

- 935 -

Nebraska Supreme Court Advance Sheets
300 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. NIMMER
Cite as 300 Neb. 906

commingled and misappropriated client funds on 10 occasions. We explained that the attorney's excuse that the misconduct was inadvertent did not overcome the presumption of disbarment.[70]

(j) Appropriate Sanction

[27,28] Absent mitigating circumstances, this court has repeatedly held that disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.[71] Mitigating factors may overcome the presumption of disbarment in misappropriation and commingling cases where they are extraordinary and substantially outweigh any aggravating circumstances.[72] In this case, we do not find any such mitigating factors.

For a period of nearly 10 years, Nimmer engaged in a pattern of commingling personal funds with client funds and using his client trust account as a personal checking account. His violations were serious, and there is no evidence of any mitigating factors in the record that explain or excuse his misconduct.

Nimmer has been disciplined for misconduct previously, and his prolonged and persistent violation of the rule against commingling reflects a general failure, or unwillingness, to fully comprehend the serious nature of his conduct. After balancing the relevant factors in comparison to other cases, and considering the need to protect the public, the need to deter others, the reputation of the bar as a whole, Nimmer's fitness to practice law, and the aggravating circumstances, we conclude the only appropriate sanction here is disbarment.

---

[70] *Id.*

[71] See, e.g., *State ex rel. Counsel for Dis. v. Thebarge*, 289 Neb. 356, 854 N.W.2d 914 (2014); *State ex rel. Counsel for Dis. v. Council*, 289 Neb. 33, 853 N.W.2d 844 (2014); *Crawford, supra* note 29; *State ex rel. NSBA v. Howze*, 260 Neb. 547, 618 N.W.2d 663 (2000); *Malcom, supra* note 69.

[72] *Council, supra* note 71.

## IV. CONCLUSION

There is clear and convincing evidence that Nimmer violated the Nebraska Rules of Professional Conduct and his oath of office by commingling client and personal funds. It is the judgment of this court that Nimmer is disbarred from the practice of law in the State of Nebraska, effective immediately. He is directed to comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, he shall be subject to punishment for contempt of this court.

JUDGMENT OF DISBARMENT.